**VIRGIN ISLANDS LABOR UNION, Appellant**

**v.**

**CARIBE CONSTRUCTION COMPANY Appellee**

No. 14,902

United States Court of Appeals

Third Circuit

Argued January 27, 1965

Decided March 26, 1965

*See, also, 343 F.2d 364*

JOHN L. MADURO (BIRCH, MADURO & DEJONGH), Charlotte Amalie, St. Thomas, Virgin Islands, *for appellant*

GEORGE H. T. DUDLEY (DUDLEY, HOFFMAN & GRUNERT), Charlotte Amalie, Virgin Islands, *for appellee*

Before MARIS, McLAUGHLIN and FREEDMAN, *Circuit Judges*

FREEDMAN, *Circuit Judge*

This is an appeal from the judgment of the District Court vacating an order of the Deputy Commissioner for Labor of the Virgin Islands which directed the reinstatement, with back pay, of four employees of Caribe Construction Company.

The employees[1] claimed that they had been dismissed because they had joined the Virgin Islands Labor Union. On a charge of unfair labor practice[2] filed by the Union, the Deputy Commissioner for Labor issued a complaint, on which he held a hearing and heard the testimony of witnesses on both sides. The Deputy Commissioner's findings of fact may thus be summarized:

On the afternoon of Friday, November 8, 1963, after they had received their pay, nine of the Company's employees, including the four men here involved, applied for membership at the headquarters of the Union. On that

---

[1] Stanley Babrow, Alfred Babrow, Rudayard Frett and Samuel Reid.

[2] 24 V.I. Code § 65 provides: "It shall be an unfair labor practice for an employer to—

\*　　　\*　　　\*

"(3) by discrimination in regard to hire or tenure of employment or any term of condition of employment, encourage or discourage membership in any labor organization, . . .;

\*　　　\*　　　\*

"(8) do any acts other than those enumerated in this section which restrain, coerce or interfere with employees in the exercise of the rights set forth in section 64 of this title."

Section 64(a) provides: "Employees shall have the right of self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint, or coercion by employers."

day, Roger F. Moran, the president of the Company, discussed separately with three of his supervisors the dismissal of the men but no mention was made of any Union matters. Mr. Moran also discussed the dismissal of the men with another employee, Raphael Warner, who had been present when the men discussed joining the Union that day and had decided not to join. The men did not work on Saturday or Sunday. On Monday, November 11, 1963, when they reported for work they were transported to the site of their job, where a notice was read to them by Mr. Moran. The notice, which was dated November 8, 1963, read as follows:

"These men will be given 1 hour during which they will be transported to their respective jobs to pick up their tools and belongings after which they will be transported to the company office where they will be paid off.

| | |
|---|---|
| STANLEY BABROW | BRYAN HENVILLE |
| ALFRED BABROW | EARL DONOVAN |
| RUDAYARD FRETT | SAMUEL REID |

R. F. Moran, President"

Two of the men listed in the notice, Henville and Donovan, had not signed the Union applications on November 8th. It had not been the practice of the Company to give notice prior to dismissal, but it had been the Company's practice to give an employee the reason for his dismissal at the time he was dismissed. No reason for the dismissal of the six men was given either in the notice or otherwise by the Company. One of the four men had worked for the Company for five or six years, another for approximately five years, another for five months, prior to the dismissal.

There are additional so-called findings of fact. They do not, however, find facts, but instead specify the existence of conflicts in the testimony. Thus there is a finding that there is a conflict in the testimony as to why the men were fired, stating as illustrations some of the reasons given by the Company. (Finding of Fact No. 16.) Again, there is a

194

so-called finding of a conflict in the testimony regarding what was discussed between Mr. Moran and Mr. Warner. (Finding of Fact No. 17. See also Finding of Fact No. 18.)

After making these findings the Deputy Commissioner stated "Conclusions" which at the most are findings of fact. These declare in substance that the men were abruptly dismissed without a stated reason, contrary to the practice of the Company; and that the president of the Company had decided to dismiss them on Friday, November 8th, after they had been paid and had left the job site. Then follows a statement: "That, while there is no evidence that the President of the Company received information relative to the decision of the men to join the Union, the evidence leads to a conclusion that they were not dismissed for inefficiency as claimed by the President." After this indirect and inconclusive statement there follows under the heading of "DECISION", the following: "In view of the foregoing, it is held that the dismissal of the four men on Monday, November 11, 1963, is an unfair labor practice act in that such action violates the intent of the Labor Relations Chapter of the Virgin Islands Code. The weight of evidence shows strongly that the real reason the men were dropped is in doubt and it is just and reasonable to resolve that doubt in favor of the employees the Chapter seeks to protect." It is manifest that the statement that the dismissal of the four men was an unfair labor practice is founded on an avowal of doubt and is not a finding of fact. The statute has not created a presumption that every employer is guilty of an unfair labor practice whenever such a charge is made against him. The presumption runs the other way. "The presumption is that the employer has not violated the law, and the burden of proof is not upon the employer, but upon the one who asserts the fact, to prove that the discharge was because of union activities."[3] The burden is on the com-

---

[3] N.L.R.B. v. Union Manufacturing Co., 124 F.2d 332, 333 (5 Cir. 1941).

plainant to establish the charge of an unfair labor practice,[4] a burden of proof which must be carried as in all other civil cases by a preponderance of the evidence. If in the mind of the fact finder the evidence seems equally balanced the charge is not established and the complaint must be dismissed. The absence of complete certainty, however, does not require dismissal of the complaint. Proof by a preponderance of the evidence is a lesser burden than proof beyond a reasonable doubt, the well-known standard in criminal cases. It does not require proof to a moral certainty; for factual determination in civil cases rests not on certainty but on probability. See the analysis by Judge Maris in Burch v. Reading Co., 240 F.2d 574, 578–9 (3 Cir. 1957); see also McSparran v. Hanigan, 225 F.Supp. 628, 641–2 (E.D.Pa. 1963).

 A careful examination of the decision of the Deputy Commissioner makes it clear that his order cannot stand because it rests upon the erroneous legal premise that doubt as to the reason for the employees' discharge must be resolved in their favor. The District Judge therefore was correct in vacating the order because it was not supported by the findings of the Deputy Commissioner.[5] We believe he went too far, however, when he dismissed the complaint on the ground that there was no substantial evidence which would support the order. For there is enough

---

[4] Thus 24 V.I. Code § 68 (c) provides for the Commissioner's decision on a complaint of an unfair labor practice: "If upon all the testimony taken the Commissioner is of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, the Commissioner shall state his finding of fact and shall issue [his order] . . . . If upon all the testimony taken the Commissioner is of the opinion that no person named in the complaint has engaged in or is engaging in any unfair labor practice, then the Commissioner shall state his finding of fact and shall issue an order dismissing the complaint."

See also N.L.R.B. v. Union Manufacturing Co., 124 F.2d 332, 333 (5 Cir. 1941); N.L.R.B. v. Tepper, 297 F.2d 280, 283 (10 Cir. 1961); N.L.R.B. v. Minnotte Manufacturing Corp., 299 F.2d 690, 692 (3 Cir. 1962).

[5] 24 V.I. Code § 70 (a) provides for review of a final order of the Commissioner by any person aggrieved. Section 70 (b) provides: "The findings of the Commissioner as to the facts, if supported by substantial evidence, shall be conclusive."

in the record to justify a finding that the men were dismissed because they joined the Union. They had performed their work and received their pay on Friday, they signed up as members of the Union later that afternoon and were dismissed on Monday morning by a notice dated Friday. The usual practice of informing employees of the reason for their dismissal was not followed. There is evidence that Warner, the Company's employee, was present when the men discussed joining the Union on Friday.[6] All this would support an inference that a causal relationship existed between the abrupt dismissal of the men and their joining the Union.[7] The Commissioner's "function was to determine the real reasons for the discharges and whether the reasons given by the employer were mere pretexts. In so doing [he] has the right to consider circumstantial evidence and draw inferences therefrom as direct evidence is not always obtainable." N.L.R.B. v. Putnam Tool Co., 290 F.2d 663, 665 (6 Cir. 1961); see also N.L.R.B. v. Ellis & Watts Products, Inc., 297 F.2d 576 (6 Cir. 1962). We do not, of course, intimate that the fact finder was required to draw the inference that the dismissals were the result of union activity, but only that such an inference was permissible on the evidence in the record.

The District Court expressed disapproval of the so-called piling of an inference on an inference. The notion is based on a confusion of inferences with presumptions and thus obscures the distinction between fact and law.

---

[6] It is true that he and Mr. Moran both denied that he had told Moran of the men's discussion, but he acknowledged that he had met with Mr. Moran, although he explained it as an effort to obtain a job for a friend. Mr. Moran testified at one point that he had discussed the dismissals only with his three supervisors, but later testified that he had also discussed it with Warner. (See Findings of Fact Nos. 17, 18.)

[7] E. Anthony & Sons v. N.L.R.B., 163 F.2d 22, 26–7 (D.C. Cir. 1947) cert. denied 332 U.S. 773; N.L.R.B. v. Montgomery Ward & Co., 242 F.2d 497, 502 (2 Cir. 1957); N.L.R.B. v. Tepper, 297 F.2d 280 (10 Cir. 1961); N.L.R.B. v. Minnotte Mfg. Corp., 299 F.2d 690 (3 Cir. 1962); see also N.L.R.B. v. Electric City Dyeing Co., 178 F.2d 980, 982–3 (3 Cir. 1950). Cf. N.L.R.B. v. Malcolm Konner Chevrolet, Inc., 338 F.2d 972, 973 (3 Cir. 1964).

It has been authoritatively established that since inferences are simply deductions from facts proven, there is no reason why a number of factual inferences may not be drawn from any fact or series of facts directly established. The problem is reviewed with his customary clarity by Wigmore: "It was once suggested that an 'inference upon an inference' will not be permitted, i.e. that a fact desired to be used circumstantially must itself be established by testimonial evidence; and this suggestion has been repeated by several Courts, and sometimes actually enforced. There is no such orthodox rule; nor can be. If there were, hardly a single trial could be adequately prosecuted. . . . In . . . innumerable daily instances we build up inference upon inference, and yet no Court (until in very modern times) ever thought of forbidding it. All departments of reasoning, all scientific work, every day's life and every day's trials, proceed upon such data." 1 Wigmore, *Evidence*, (3d Edition 1940), § 41, p. 434–6.[8]

It is clear, therefore, that there is not such a want of evidence as required a dismissal of the complaint. There is, rather, the absence of a finding of fact that the men had been dismissed because of their Union activity. This inherent silence in the findings regarding the central factual issue in the case probably was set in motion by the Union's

---

[8] See also Annotation, Inference on Inference: Presumption on Presumption, 95 A.L.R. 62 (1935). See Madden v. Great Atlantic & Pacific Tea Co., 106 Pa. Super. 474, 480–81, (1932), where on a suit for damages resulting from the presence of a dead mouse in a package of tea purchased from defendant, defendant argued that it was error to permit the jury to infer that the mouse was in the paper bag when delivered because it was found next day in plaintiff's coffee can, and then to infer that the mouse so affected the tea brewed by plaintiff that it nauseated her, and then to infer that it was the three cups of tea which she drank rather than the meat which she ate at the same time which caused her illness. It was argued that this was a forbidden piling of inference upon inference. The court rejected this contention, saying: "Outside the realms of pure mathematics all proofs are but a question of probabilities. . . . When in the proof of a particular fact we depend upon a succession of inferences or a chain of indefinite length the probability of a certain result following becomes so tenuous that it cannot be accepted. However, we do not understand the rule in Pennsylvania to be that only one essential element in a case can be made out by circumstantial evidence."

charge of unfair labor practice. It asserted that nine employees signed a union membership card on Friday and that on the following Monday the president of the Company summarily dismissed four of them whom he termed Union ringleaders. But it did not allege that they were dismissed because they joined the Union or because of their Union activity. The error thus initiated permeated the proceedings which followed. The language of the charge was in turn quoted in the complaint without any other specification. Evidently misled by this, the Deputy Commissioner's findings follow the circumstantial statement of the charge, with no express finding whether the dismissals were for labor union activity.

In these circumstances the interests of justice require that the case should be remanded so that the Deputy Commissioner for Labor may make express findings on the ultimate question whether the men were dismissed because of any or all of the reasons given by the Company or because of their labor union activity in joining the Union.

The judgment of the District Court therefore will be reversed to the extent that it dismissed the complaint and the District Court will be directed to remand the record to the Commissioner of Agriculture and Labor so that the Deputy Commissioner for Labor who heard the evidence may make explicit findings of fact and appropriate conclusions of law on the record before him.