R. J. LISON COMPANY, Inc., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 20879.

United States Court of Appeals Ninth Circuit.

June 26, 1967.

M. J. Diederich, Sweeney, Cozy & Foye, Los Angeles, Cal., for appellant.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, Peter M. Giesey, Attys., N.L.R.B., Washington, D. C., Ralph E. Kennedy, Reg. Director, N.L.R.B., Los Angeles, Cal., for appellee, Brundage & Hackler, Los Angeles, Cal., of counsel.

Before HAMLEY and JERTBERG, Circuit Judges, and WHELAN, District Judge.

JERTBERG, Circuit Judge:

This case is before the Court on petition of R. J. Lison Company, Inc., pursuant to Sec. 10(f) of the National Labor Relations Act to vacate and set aside the decision and order of the National Labor Relations Board requiring petitioner to reinstate, with back pay, its discharged employees, Curtis Reed and Stuart Taber, members of Teamsters Automotive Workers Local 495, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

The Board cross-petitions for enforcement of its order. The Board's decision and order are reported at 157 N.L.R.B. No. 101. No jurisdictional issue is presented.

Petitioner, a California corporation, sells and services power sweepers, principally as a franchise dealer for Wayne sweeping equipment. As a part of its service it provides maintenance service for about one thousand customers.

In the summer and fall of 1964, petitioner's management personnel consisted of R. J. Lison, president, Peter McGrath, general manager, and Dick Sheldrick,

a supervisor of the work force who was designated as service manager. The work force consisted of four mechanics, one driver and a parts man. Curtis Reed was a mechanic, and Stuart Taber was the parts man.

The record reveals that Reed and Taber contacted an official of the Union in early August of 1964, and received form cards authorizing the Union to represent the employees of petitioner who were members of the work force; that Reed and Taber each signed an authorization card and they secured the signatures of the four other employees of the work force; that pre-election and post-election meetings were held after work hours in Taber's home located about a block and a half from petitioner's plant; and that on one occasion during the noon hour, in the hearing of Sheldrick, Reed announced to the members that a post-election meeting was to be held at Taber's home.

After all six employees of the work force authorized the Union to represent them, the Union filed a petition for an election. Petitioner consented to the election which the Union won by unanimous vote of all six members of the work force.

On November 13, 1964, the Union was certified as the exclusive bargaining representative of petitioner's employees who constituted the work force. Petitioner and the Union thereafter engaged in several contract bargaining sessions.

Reed was discharged on December 31, 1964, and Taber was discharged on January 22, 1965.

A complaint was filed against petitioner by the General Counsel of the Board, and the Board, based upon the charge filed by the Union on February 2, 1965, alleging, in substance, that petitioner's discharge of Reed and Taber was in violation of Sec. 8(a)(1) and (3) of the Act.

Petitioner filed its answer to the complaint denying the allegations of unfair labor practices.

Following hearing, the Trial Examiner found that petitioner discharged Reed and Taber because each had engaged in protected union activities, thereby violating Sec. 8(a)(3) and Sec. 8(a)(1) of the Act. He further found that the elimination by petitioner of Taber's overtime work, at premium pay, on and after October 30, 1964, was violative of Sec. 8(a)(3) and (1) of the Act.

The Board found that the evidence was insufficient to support the latter finding, and dismissed such charge from the complaint. In all other respects, the Board adopted the findings, conclusions and recommendations of the Trial Examiner.

On this review petitioner earnestly contends that the findings of the Board that petitioner discharged Reed and Taber because each had engaged in protected union activities are not supported by substantial evidence in the record, considered as a whole. In support of this contention petitioner asserts that the record as a whole reveals that the discharge of Reed was for an economic reason—the falling off of petitioner's business which dictated a reduction in its work force—and that Taber was discharged because of his failure to properly perform his duties in keeping proper records in inventory control.

The reviewing power of this Court over orders of the Board is set forth in Sec. 10(f) of the Act, which states:

> "[T]he findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive."

■ The standard of review set forth in that provision is elaborated upon in Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951) and its companion case, N.L.R.B. v. Pittsburgh S.S. Company, 340 U.S. 498, 71 S.Ct. 453, 95 L.Ed. 479 (1951). If the findings are not supported by substantial evidence on the record when considered as a whole, it is our duty

to set aside and refuse enforcement of the order of the Board. Universal Camera Corp. v. N.L.R.B., supra; N.L.R.B. v. Isis Plumbing & Heating Co., 322 F.2d 913 (9th Cir. 1963); Lozano Enterprises v. N.L.R.B., 357 F.2d 500 (9th Cir. 1966).

Under the rationale expressed in *Universal Camera,* supra, it is our duty in determining the substantiality of evidence supporting a Labor Board decision to take into account contradictory evidence or evidence from which conflicting inferences could be drawn.

"The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera, supra, 340 U.S. at 488, 71 S.Ct. at 464.

We recognize that an affirmative duty rests upon General Counsel to establish by substantial evidence that, in respect to each discharge, petitioner was motivated to do so because each discharged employee had engaged in protected union activities. The burden is not upon the petitioner to disprove such motivation. See Miller Electric Mfg. Co. v. N.L.R.B., 265 F.2d 225 (7th Cir. 1959); N.L.R.B. v. Rockwell Mfg. Co., 271 F.2d 109 (3rd Cir. 1959); N.L.R.B. v. Minnotte Mfg. Corp., 299 F.2d 690 (3rd Cir. 1962); N.L.R.B. v. Rickel Bros. Inc., 290 F.2d 611 (3rd Cir. 1961).

We are also mindful of the established principle of law that an employer may discharge an employee for good cause, or bad cause, or no cause at all unless the real motivating purpose is to do that which Sec. 8(a)(3) of the Act forbids. N.L.R.B. v. Sebastopol Apple Growers Union, 269 F.2d 705 (9th Cir. 1959); N.L.R.B. v. Isis Plumbing & Heating Co., 322 F.2d 913 (9th Cir. 1963).

The ultimate question presented in this type of case is one of motivation of the employer in discharging an employee. In this case was each discharge motivated by the union activities in which Reed and Taber engaged? Since neither discharge was discriminatory on its face, petitioner's motivation for each discharge rests entirely upon inferences to be drawn from the record. Inferences can be drawn only after conflicting evidence is resolved. The resolution of conflicting evidence is peculiarly a question for the trier of fact. To make such resolution the Trial Examiner had to decide what part of whose testimony he would believe. In making such resolutions the Trial Examiner had an advantage which we do not have. He saw and heard the witnesses. He had a much better basis for determining credibility than we have.

In support of petitioner's contention that the findings of the Board are not supported by substantial evidence, petitioner levels its principal attack against the Trial Examiner. It argues that such findings are based on pure speculation rather than substantial evidence, and severely questions the competency of the Trial Examiner to properly weigh and evaluate the evidence, and to determine the credibility of witnesses. It implies bias against the petitioner, on the part of the Trial Examiner, because in certain areas of conflicting testimony he chose to credit portions of the testimony of certain witnesses for the General Counsel and not to credit portions of the testimony of certain witnesses of petitioner. It further argues that the Trial Examiner placed too much emphasis on certain evidence offered by the General Counsel, and disregarded or only put slight emphasis on testimony offered by the petitioner.

It further argues that credibility resolutions made by the Trial Examiner were mere form because of the use by him of language similar to that used by the Trial Examiner in other cases over which the Trial Examiner presided. Finally, it argues he ignored the fact that certain indicia of unlawful discrimination on the part of the employer, which frequently appear in cases of this type, are not present in this case, such as, interrogation of employees by the employer concerning union activities, surveillance by the employer over union

activities of its employees, interference by the employer with the union activities of its employees, and prior history of unfair labor practices on the part of the employer.

We have carefully reviewed the entire record in this case, not only in the light of the governing principles of law set forth above in this opinion, but also in light of petitioner's contentions. We are unable to say that any of the evidence relied upon by the Trial Examiner is inherently incredible, nor do we find the inferences drawn from the record by the Trial Examiner to be unreasonable.

In our view the findings of the Board are supported by substantial evidence in the record considered as a whole, and are therefore conclusive upon us.

The petition to vacate and set aside the decision and order of the Board is denied, the petition is dismissed, and the cross-petition of the Board for enforcement of its order is granted.