COMMISSIONER OF LABOR OF THE VIRGIN ISLANDS, Petitioner

v.

B. BLAZEK, d/b/a Uptown Shoe Store, Respondent

Civil No. 88-1968

District Court of the Virgin Islands
Div. of St. Thomas and St. John

December 22, 1969

Arnold M. Selke, Esq., Assistant Attorney General of the Virgin Islands, *for petitioner*

George H. T. Dudley, Esq., *for respondent*

ALMERIC L. CHRISTIAN, *Judge*

OPINION

This is an appeal from a judgment of the Municipal Court of the Virgin Islands, entered on February 1, 1968, affirming a supplemental decision and order of the Commissioner of Labor for the Virgin Islands, dated September 7, 1967.

The matter was first before the Municipal Court sub nom. "Commissioner of Labor of the Virgin Islands v. Uptown Shoe Store" on a petition of the Office of the Attorney General of the Virgin Islands dated March 16, 1967, praying enforcement of an order of the Commissioner dated January 10, 1967. The designated respondent, by counsel, moved to dismiss the petition and remanded the matter to the Commissioner for further proceedings, for reason that (a) "Uptown Shoe Store" was not a proper party, in that it was not the "employer" of Victoria Velez, the union member on whose behalf the Virgin Islands Labor Union, SIU-AFL-CIO had filed a complaint with the Commissioner; (b) the employee had been discharged for valid reasons not appearing in the order of the Commissioner, now sought to be enforced; and (c) the failure of respondent to procure timely review of the Commissioner's order was due to inadvertence.

The Attorney General having interposed opposition to the motion, the Municipal Court, after hearing, entered an order dated May 19, 1967, denying the motion to dismiss the proceeding, but ordering the amendment of the caption of the cause to designate respondent as "B. Blazek, d/b/a

Uptown Shoe Store", and setting May 22, 1967 as the date for a hearing on the merits of the petition.

The petition came on to be heard as scheduled, and, after hearing argument of counsel, the Court, on June 13, 1967, remanded the matter to the Commissioner of Labor for further hearing, directing that at such hearing respondent be permitted to "defend the complaint filed against him before the Labor Department on the 9th day of November, 1966", and further ordering the defendant to file and answer to the said charges.

On the hearing on remand, the Commissioner entered the supplemental decision and order mentioned above, which affirmed his previous order entered January 10, 1967. Respondent thereafter, on October 6, 1967, petitioned the Municipal Court for review of the supplemental order, claiming that it was (a) "unreasonable, illegal, invalid, and contrary to the evidence and accepted interpretation of the testimony advanced by an employer for cause of discharge."; and (b) "arbitrary, illegal, and invalid, in that it pretends to condone an illegal activity on the part of respondent's employee and to deny respondent's right to discharge an employee for prohibited illegal activities on his premises, contrary to his specific directions during business hours."

A hearing was had on the said petition on December 15, 1967, and on February 1, 1968, the Court entered its judgment from which this appeal is taken.

██ On appeal, respondent for the first time challenges the jurisdiction of the Municipal Court to have entertained the original petition for the enforcement of the Commissioner's order. This lack of jurisdiction, respondent alleges, grows out of a failure of the petitioner to comply with the provisions of Title 24 V.I.C. Sec. 69, as amended. I find, however, that the alleged deficiency goes not so much to the jurisdiction of the Court as to an

irregularity in the filing of certain papers. Respondent, not having raised this objection before the Municipal Court, must be deemed to have waived any such irregularity. In any event, I find further that, when the Municipal Court heard respondent's petition for review and entered the order from which respondent now appeals, there was sufficient and substantial compliance with the statute, and I find that the cause was properly before the Municipal Court.

Having concluded that the Municipal Court had jurisdiction to entertain the matter, I now turn to a review of that Court's actions.

The Municipal Court, at no time, had before it for its consideration the transcript of the first hearing containing the testimony adduced on behalf of the discharged employee. Upon that Court's review of the Commissioner's order, the only testimony before it was that contained in the transcript of the second hearing held on July 27, 1967. At that hearing, the only testimony offered was that of the respondent and the witnesses called on his behalf. I note from the record herein that respondent filed his notice of appeal on February 28, 1968, and that the case was transmitted to the District Court by the Municipal Court on March 14, 1968. It was not until March 15, 1968 that the Office of the Attorney General even filed a request of the reporter for a transcript of the proceedings of the first hearing before the Commissioner.

With nothing more before the Municipal Court than the transcript of the hearing of July 27, 1967, and all that testimony being in favor of the respondent and uncontradicted, or even unquestioned, the affirmance by the Municipal Court of the findings of the Commissioner of Labor, as supported by "substantial evidence", as required by 24 V.I.C. Sec. 70(b), is clearly erroneous and must be reversed.

■ Upon appellate review of the judgment of the Municipal Court, the District Court

"*** may affirm, modify, vacate, set aside, or reverse any judgment or order appealed from, and may remand the cause and direct the entry of such appropriate judgment, decree or order, or require such further proceedings to be had as may be just under the circumstances", 4 V.I.C. Sec. 33.

In this instance, I have examined all the evidence heard by the Commissioner, including that contained in the transcript of the November 21, 1967 hearing (the one not considered by the Municipal Court), in an effort to determine if that Officer's findings of fact are supported by substantial evidence. After thus reviewing both transcripts and the entire record, it is the finding of this Court that, the findings of fact of the Commissioner of Labor are not so supported.

The evidence offered on behalf of Victoria Velez, the discharged employee was to the effect that, some time during the year of 1965, she and other employees of respondent joined the Labor Union which was subsequently, on August 30, 1965, certified as the exclusive representative of all employees of the Uptown Shoe Store, with certain stated exceptions. Velez testified that immediately after a visit to the store by the union official, some time prior to certification, respondent had called her and two other employees in the back of the store and had asked, why were they doing this to him, and was he not a good employer to them. She also testified that, at about this time, he had told her that, if she joined the Union, he would "send her home". She also testified that neither of her two co-employees, with whom respondent had had the conversation mentioned above, were with the store when she was ultimately dismissed. As to one of them, she did not suggest the reason for termination of that person's employment. The other, she testified, had been dismissed by

respondent, but rehired when she had been brought back to the store by a Mr. Esannason, a union official. This employee, she went on to say, voluntarily terminated her employment at the store after she received a high-school diploma.

The testimony adduced on behalf of respondent was that, he had dismissed Miss Velez in September of 1966, not for her affiliation with the Union, but because she persisted in receiving and selling Puerto Rican lottery tickets in his store during business hours, while she was supposed to be on duty as a sales clerk. He testified that on occasions customers of the store had to stand by and wait for service while she sold Puerto Rican lottery tickets. He also stated that several times when all of his employees were out to lunch, and he was tending the store, numerous persons would come to the store, asking to see the scheme, i.e. the list of winning numbers of the Puerto Rican lottery drawings. These persons, he said, told him that they had purchased tickets from Velez and had come to ascertain if their tickets had won. He testified that he had spoken to Miss Velez about this on approximately twenty occasions. He became certain that she was trafficking in lottery tickets in his store in May of 1966, though he had an inkling that something had been going on for many months prior thereto. Between May of 1966 and September of 1966, when she was dismissed, he had no doubt of what the activity was, because he personally saw her receiving tickets at his store, saw her actually making sales of the tickets and collecting money therefor in his store, and also saw her, in his store, going over accounts with the persons from whom she obtained tickets, in an effort to ascertain how much she owed them. He said that he actually saw her paying such persons once the balance had been struck. He testified also that he had conveyed this information to a Mr. Stevens, but it was not clear

from the record whether the Mr. Stevens, to whom he complained, was the Commissioner of Labor, the hearing officer. He stated further that he complained to Mr. Esannason of the Union of this activity by Velez, and told him that, if she did not terminate this activity, he would have to dismiss her. Mr. Esannason's response, he said, had been to the effect that he (Blazek) could not dismiss Velez, and that, the selling of Puerto Rican lottery tickets was but a joke, Esannason himself drawing and exhibiting from his pocket, at the moment, Puerto Rican lottery tickets which he had purchased, and saying to the respondent that such tickets could be purchased on any street corner in St. Thomas. Respondent testified that this conversation with Esannason took place nine or ten days before he actually dismissed Velez, and that he dismissed her because, despite his repeated warnings and prohibitions, in spite of his complaint to Esannason, and her avowal to Esannason that she was no longer actually selling tickets but merely receiving them, he actually saw her on several occasions, within the nine- or ten-day period, selling Puerto Rican lottery tickets in his store. Respondent called as witnesses two co-employees of Velez. Each of them in some way verified that Velez had been selling lottery tickets on the premises, over the objections of respondent.

It should be noted that, when respondent first received the complaint against him from the Commissioner of Labor, alleging that he had discharged Miss Velez for union activity, he had written to the Commissioner on November 18, 1966, denying that he had been so motivated. He stated that he "was not aware of any special union activity of Miss Velez. However, Miss Velez did have some non-union activities of her own in the Uptown Shoe Store". He said that he had discharged her because there was insufficient work for three sales clerks, and one had to

629

go. It is of some significance that as of the dates of the hearings, he had hired no replacement for Miss Velez, by her own admission. Mention should also be made of the fact that Miss Velez was the senior employee in point of service at the time she was dismissed.

■ ■ In arriving at his finding, it would appear that the Commissioner proceeded on the same presumption, though this time unexpressed, that was specifically proscribed in V.I. Labor Union v. Caribe Construction Company, 340 F.2d 364, 5 V.I. 191 (3 cir. 1965). What seems to have been clearly overlooked or forgotten was that the presumption runs in favor of the employer, and that it was the complainant's burden to establish the charge of unfair labor practice, V.I. Labor Union v. Caribe Construction Company, supra. On the evidence, I find that the complainant failed to carry its burden by a preponderance of the evidence. In fact, on the evidence, I find the preponderance to be heavily in favor of the employer. After all, it was on August 30, 1965 that the Union was certified as the representative of the employees, and, according to Velez, it was at about this time that Blazek had told her he would send her home, if she joined the Union. If this were the cause of her dismissal, it is difficult to understand why the employer would wait until September 23, 1966 to terminate her services. It is far more likely that the employer—having learned in May of 1966 that an activity declared illegal under the federal laws, and carrying maximum penalty of $1,000 or two years in jail, or both, was being conducted in his store, and having repeatedly warned the employee to desist—would fire her in September of 1966, when she persisted in flouting the law as well as his directions. The evidence is uncontradicted that, approximately nine days before the dismissal, the employer complained to a union official, expressing at that time not only his displeasure with the

activity, but his fear of personal involvement. When he received no satisfactory redress and himself saw the employee engaging in the forbidden activity at least five times during that nine-day period, although she had stated to the union official that she had discontinued her unlawful activities, it was only natural and to be expected that he would take the ultimate step of dismissing her. It is clear that for more than a year before the dismissal, the employer knew of the employee's membership in the Union. Other than to vote for the Union as her bargaining representative and to become a member thereof, there is no evidence of any particular union activity by the employee. The "non-Union activities of her own", to which the employer adverted in his letter of November 18, 1968, which letter was accepted as his answer to the complaint, stand out clearly as the motivation for the dismissal, and no one would seriously argue that such activity did not constitute sufficient cause for dismissal. Blazek's explanation of why he had suggested an economic reason for her dismissal is a reasonable one. He said that, although he decided he had to dismiss Velez, he was unwilling to say anything officially which would cause further trouble for her. Certainly, his so doing provided no sufficient basis on which the hearing officer could properly find "Blazek's testimony as a whole is inconsistent and contradictory and is unworthy of belief". The finding of the Commissioner, that the dismissal was for union activity, was, therefore, unwarranted, was not supported by "substantial evidence", and cannot be permitted to stand.

The judgment of the Municipal Court, upholding the orders of the Commissioner of Labor is hereby reversed, and the petition praying enforcement of the Commissioner's order is dismissed.