# GOVERNMENT OF THE VIRGIN ISLANDS, Applicant

## v.

# PUBLIC EMPLOYEES RELATIONS BOARD, Respondent

Civil No. 217/1984

Territorial Court of the Virgin Islands

Division of St. Thomas and St. John

February 3, 1986

ELBERT G. BENNETT, ESQ., Assistant Attorney General (Department of Law), St. Thomas, V.I., *for applicant*

ROBERT J. AMBROGI, ESQ., St. Thomas, V.I., *for respondent*)

CHRISTIAN, *Senior Sitting Judge*

## MEMORANDUM OPINION AND JUDGMENT

## I. INTRODUCTION

This matter is before the Court for review on Assignment of Errors filed by the Government of the Virgin Islands ("the Government"), in which it lists four several [separate], distinct instances in which it contends the Public Employees Relations Board ("PERB") erred in its Findings and Order relative to a dispute between the Government and District 2A, Transportation, Technical, Warehouse, Industrial and Service Employees Union, affiliated with District 2, Marine Engineers Beneficial Association

Associated Maritime Officers, AFL–CIO ("MEBA"), pursuant to 24 V.I.C. § 379. Because we find no merit in any of the contentions of the Government, we affirm.

## II. BACKGROUND

On July 15, 1981, the Government and MEBA entered into a collective bargaining agreement, originally effective from October 1, 1980, to and including September 30, 1983,[1] and extended on September 16, 1983, "until the provisions of a new contract have been mutually accepted, ratified and signatured".[2] The original agreement covered "all supervisors employed by the Government of the Virgin Islands in its Departments of Public Works, Health, Finance, Social Welfare, Property and Procurement, the Division of Personnel and the Consumer Services Administration, excluding non-supervisory employees, confidential employees, commissioners, assistant commissioners and deputy commissioners".[3] On January 4, 1983, the agreement was amended to include supervisors in the Departments of Education, Conservation and Cultural Affairs, and Housing and Community Renewal.[4]

In addition, the Agreement as thus amended provided in pertinent parts:

*Recognition.*

*Section 1: Unit*

The Employer recognizes the Union as the sole and exclusive bargaining representative, for purposes of collective bargaining with respect to pay, hours, salaries, grievances, employee benefits, and all other terms and conditions of employment, of all individuals employed in all classifications covered by this Agreement, as follows: All Supervisors employed by the Government of the Virgin Islands in its Departments of Public Works, Health, Finance, Social Welfare, and Property and Procurement, the Division of Personnel and the Consumer Services Administration, excluding non-supervisory employees, confidential employees, commissioners, assistant commissioners, and deputy commissioners. Article I, Section 1.

---

[1] See Page 52 of Contract dated July 15, 1981.

[2] See Stipulation dated September 14, 1983, appended to and at the end of the original agreement.

[3] See Page 3 of Agreement.

[4] See Stipulation dated January 4, 1983, appended at end of the original Agreement.

*Section 2:*

The Employer shall not make any unilateral changes in the pay, hours, or other terms or conditions of employment of any supervisors. Article II, Section 2.

After providing in Article VI, Section 3(A) that all the holidays listed in 1 V.I.C. § 171 will be paid holidays for the purpose of the agreement, the parties added the following term: "Whenever any holiday falls upon a Saturday, it shall be observed on the preceding Friday. When local law requires that any holiday be observed on a day other than the day specified hereinabove, local law shall be controlling." It is the proper construction and application of the first sentence of this provision that is the basis of the contention between the parties to this lawsuit.

Article VI also provides as follows:

*Health and Welfare Benefits, Pensions, Holidays, and Sick Leave*

*Section 1:*

Pursuant to the Virgin Islands Code, the Virgin Islands Rules and Regulations, and Executive Orders, as they currently exist or as they may be subsequently created, amended or revised, all health, welfare, annuity, insurance, sick leave, annual leave, jury and military service leave, and holiday benefits and privileges applicable to employees of the Virgin Islands Government shall apply equally to the employees covered by this Agreement.

*Section 2:*

It is agreed that the benefits and privileges referred to in Section 1 of this Article shall not be reduced during the term of this Agreement.[5]

The agreement was approved by the Governor on July 15, 1981, and by the 14th Legislature by Act No. 4613.

On November 15, 1983, after the agreement had been in effect for nearly two years, and contrary to the construction and performance the parties had given the agreement during all that time, Chief Negotiator of the Government, Alda Monsanto, forwarded the following letter to Rudolph V. Foy, MEBA Representative:

---

[5] See Page 12 of the Agreement.

Dear Mr. Foy:

The Department of Law has rendered a legal opinion concerning the validity of Article VI, Section 3 of current MEBA contract . . . "Whenever any holiday falls upon a Saturday it shall be observed on the preceding Friday."

It is the Government's legal position that Article VI, Section 3 is invalid based upon the limitations prescribed by ACT 4440 as to the scope of permissible collective bargaining matter. 24 V.I.C., Section 374(a) states "Rates of pay, hours, salaries, employee benefits, terms and conditions of employment, and all matters relating thereto may be specifically negotiated in a collective bargaining proceeding between the public employer and the exclusive representative unless otherwise specifically restricted by law".

It is the legal opinion that the MEBA contract purports to create a new holiday over and above those specifically designated by the Legislature in 1 V.I.C., Section 171. Consequently, in the Government's opinion, that portion of the contract is in derogation of Act 24, V.I.C., Section 374(a), and thus illegal. In addition, the designation of a holiday for supervisory personnel which would not be observed by those who are supervised creates a factual situation which would appear to violate the provisions of sub-section b as well. That sub-section provides that no collective bargaining agreement shall be valid to the extent it unduly interferes with the right of the Government to execute public policy by:

"(1) directing and supervising employees" or "(4) maintaining efficiency of operations". The opinion concludes that any contractual provision which would require employees to perform their daily tasks totally unsupervised constitutes an undue interference with Employers direction and supervision of employees, which, in turn, would have an obvious detrimental effect in the maintenance of operational efficiency.

The Government will not attempt at this time to collect from individual employees any benefits previously paid. However, by this letter we wish to serve notice that these benefits will not be continued in the future, and in keeping with proper collective bargaining procedures, I am extending an invitation to your union to enter into the bargaining process in order that the invalid provisions may be renegotiated.

Your usual and prompt cooperation in this matter will be greatly appreciated. If possible, it is my intention to renegotiate this issue when we meet on Friday, November 18th.

Since November 15, 1983, the Government has refused to give, and has not given, effect to said disputed provision of Section 3, Article VI of the Agreement.

Pursuant to 24 V.I.C. § 379, on December 29, 1983, MEBA filed an "Unfair Labor Practice Charge Against Employer", the Government, with PERB, alleging that the Government violated § 378(a)(1), (5) and (8) of the Public Employees Labor Relations Act, 24 V.I.C. § 361 et seq. ("the Act") by unilaterally terminating the practice of allowing the employees covered by the agreement to observe holidays which fall on Saturday on Friday as provided in the agreement.

> Pursuant to Section 379.4(B) of the Rules and Regulations of PERB, PERB conducted an informal conference on the charge on January 25, 1984. Following the conference, PERB determined, pursuant to Section 379.5(A) of its Regulations, that no hearing was warranted. Instead, on February 6, 1984, PERB served proposed findings of fact on all parties. PERB allowed the parties ten days to object to the proposed findings, and notified them that if no objections were received within the designated time, the proposed findings would be accepted as a complete and accurate statement of the relevant facts. PERB received no objections [from the Government or MEBA]. PERB also provided each party with an opportunity to file briefs. Neither party did so. Based on the record [before PERB, it rendered its] findings, opinion and Order.

In its Findings and Order of March 1, 1984, based on the foregoing fact situation, PERB decided:

> We conclude that the provision requiring observance of Saturday holidays on the preceding Friday is a lawful one. By failing to give it effect, the Government violated its collective bargaining agreement with MEBA in violation of Section 378(a)(8) of the Act. The Government's decision to abrogate this provision was also a unilateral change of a mandatory bargaining subject. Because the Government did not properly bargain before making the change, it violated Section 378(a)(5) of the Act. The Government's action also derivatively violated Section 378(a)(1) of the Act.

PERB then ordered the Government to:

1. Cease and desist from:

17

a. Unilaterally changing wages, hours or other terms and conditions of its employees without first bargaining with their exclusive representative to resolution or impasse;

b. Violating or failing to comply with any of the terms of its collective bargaining agreement with MEBA;

c. Otherwise interfering with, restraining or coercing its employees in their exercise of rights guaranteed under the Act.

2. Take the following affirmative action which will effectuate the policies of the Act:

a. Immediately comply with and give effect to the provision of its agreement with MEBA requiring observance of Saturday holidays on the preceding Friday;

b. Immediately make whole any employees represented by MEBA adversely affected by the unlawful change;

c. Upon request by MEBA, if any, bargain collectively in good faith to resolution or impasse over the observance of Saturday holidays by employees represented by MEBA;

d. Post in conspicuous places where employees represented by MEBA normally congregate and leave posted for not less than thirty (30) days the attached Notice to Employees;

e. Notify the PERB within thirty (30) days of receipt of this decision and order of the steps taken to comply herewith.

On March 19, 1984, the Government, pursuant to 24 V.I.C. § 380, applied to this Court for a Writ of Review, listing the following items in its Assignment of Errors made by PERB in its action on the case:

*Grounds on Which Relief Is Sought*

1. There is an absence of substantial evidence on the record considered as a whole to support the PERB's conclusion that the Government refused to give effect to Article VI Section 3 of the Agreement.

2. There is an absence of substantial evidence on the record considered as a whole to support PERB's conclusion that either the opinion of the Attorney General or the letter of the Chief Negotiator inviting the Union to renegotiate the provision had the effect of abrogating Article VI Section 3 of the Agreement.

3. There is an absence of substantial evidence on record when considered as a whole to support the PERB's conclusion that the Government did not properly bargain with the Union.

18

4. Article VI, Section 3 has the effect of creating an additional holiday for MEBA employees without proclamation by the President or Governor as required by 1 V.I.C. 171 and is therefore in violation of 24 V.I.C. 374(a).

We granted Review by Writ dated August 15, 1985, and issued August 17, 1985.

## III. DISCUSSION

As we begin our discussion in this case, we must bear in mind how we are required by law to proceed under the standard of review applicable on appeal. 24 V.I.C. § 380(b) prescribes the standard we must follow:

(b) In review by appeal pursuant to this section, all questions of fact determined by the PERB pursuant to section 379, shall be conclusive if supported by substantial evidence on the record considered as a whole. No objection not urged before the PERB shall be considered in a review by the Territorial Court unless the failure to urge the objection is excused by the court because of extraordinary circumstances.

■ Many cases support the proposition that "A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the commission of an opportunity to consider the matter, make its ruling and state the reasons for it". Unemployment Compensation Commission of Territory of Alaska v. Aragon, 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946).

This basic idea is clearly the rationale for the enactment of § 380(b).

Indeed this basic language is embodied in several statutes creating major federal regulatory agencies. Davis, Administrative Law Treatise, Section 20.06(19). Further, for positive reasons which should be too obvious to require exhaustive enumeration, e.g., economy as to valuable time and financial cost, the law is substantially the same whether or not it happens to be embodied in such a statutory provision. Id. at 92.

A case in point is Commissioner of Labor v. Blazek, 7 V.I. 622 (D.C.V.I. 1969). In Blazek, an employee of Uptown Shoe Store ("Uptown"), Victoria Velez, was dismissed from her job. Her union, Virgin Islands Labor Union, filed a complaint with the Commissioner of Labor against Uptown, praying for her reinstatement and/

or back wages. The Commissioner of Labor found for the employee and issued an order to that effect, dated January 10, 1967. On March 16, 1967, the Office of the Attorney General petitioned the Court to enforce the Order of the Commissioner. Counsel for respondent Uptown moved to dismiss the petition and remand the matter to the Commissioner for the following reasons: (a) Uptown was not a proper party, in that it was not Velez's employer; (b) the employee had been discharged for valid reasons not appearing in the Commissioner's order; and (c) the failure of respondent to procure timely review of the Commissioner's order was due to inadvertence. After hearing the arguments of counsel, the Court remanded the matter to the Commissioner of Labor for further hearing. On rehearing, the Commissioner entered a supplemental decision and order which affirmed his previous order entered January 10, 1967. Respondent thereafter, on October 6, 1967, petitioned the Municipal Court for review of the supplemental order. A Review hearing was held on December 15, 1967, and the Court entered its judgment on February 1, 1968, affirming the Commissioner's order. Respondent appealed to the District Court.

On appeal, respondent for the first time challenged the jurisdiction of the Municipal Court to have entertained the original petition for the enforcement of the Commissioner's order dated January 10, 1967. The District Court held that the alleged deficiency did not go so much to the Court's jurisdiction as to an irregularity in the filing of certain papers in the case. But directly relevant to the question we address in this portion of our opinion, the Court further found that the respondent, having failed to raise his objection below, must be deemed to have waived any such irregularity.

In Keystone Roofing v. Occupational S. & H. Commission, 539 F.2d 960 (3d Cir. 1976), we glean the relevant facts from the reporter's summary of the case:

> Petitioner was cited for failing to provide a perimeter guarding around a flat roof in violation of 29 C.F.R. Section 1926.500(d)(1), which requires a railing or its equivalent around "[e]very open-sided floor or platform 6 feet or more above adjacent floor or ground level". Before the hearing examiner, petitioner contended that the regulation applied to floors, but not to flat roofs. The examiner rejected this contention. Petitioner did not request discretionary review. The report of the examiner thereby became the final order of the Commission within 30 days, by operation of 29 U.S.C. Sections

20

659, 661(i). The employer then filed a petition for review in this court. The Secretary of Labor responded by filing a motion to dismiss. The Secretary contends that the employer's failure to urge its contention that a roof is not a floor before the full Commission precludes us from reviewing the administrative action. Specifically, the Secretary relies on 29 U.S.C. Section 660(a), which states, inter alia: *"No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."* (Emphasis added.) ·

Based on the foregoing, the Court held that because the Petitioner did not urge its particular objection upon the full Commission, the Court could not entertain the petition for review. Id. at 963. The Court concluded by quoting United States v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952) as follows:

> [O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts. . . . Repetition of the objection . . . might lead to a change of policy . . . . Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.

▆ Applying the above principles to the instant case, we hold that we are without authority to disturb the decision of PERB. Here, the plain language of 24 V.I.C. § 380(b) which prescribes the standard and lays down the extent and scope of our authority on review forbids us from considering any objection not urged before PERB.

On December 29, 1983, pursuant to 24 V.I.C. § 379, MEBA filed an Unfair Labor Practice Charge against the Government. On February 3, 1984, pursuant to § 379.4(B) of its Rules and Regulations, PERB conducted an informal conference on the charge; determined, pursuant to § 379(A) id., that no hearing was warranted; prepared and served Proposed Findings on all parties

on February 6, 1984;[6] notified all parties that they were given ten days to file any objections to the proposed findings and if no objections to these findings were received by PERB within the ten days allotted, "the proposed findings would be accepted as a complete and accurate statement of the relevant facts". Neither party objected. PERB also invited both parties to brief any questions they wished to. Neither party submitted briefs. It is only after granting the parties what we consider such ample and complete due process that PERB rendered its Final Findings, Opinion and Order.

The first step taken by the Government after its attenuated attempted unilateral amendment of the duly executed collective bargaining agreement communicated to MEBA by the Government's Chief Negotiator on November 15, 1983, is the Government's Application to this Court for review of PERB's aforesaid Final Findings, Opinion and Order, four months later, on March 19, 1984. Since none of the four "Grounds on Which Relief Is Sought" from this Court listed therein as the Government's Assignment of Errors were ever made before PERB, in the words of United States v. L. A. Tucker Truck Lines, Inc., cited by the Third Circuit in Keystone Roofing v. Occupational S. & H. Commission, supra, this Court "should not topple over [this] administrative decision" of PERB.

Besides, as permitted by the last clause of 24 V.I.C. § 380(b), this Court has not been petitioned by the Government to excuse its failure to urge any objection(s) before the administrative body "because of extraordinary circumstances".

Based on the foregoing, without more, this Court is satisfied in holding that since the Government did not comply with the prerequisites prescribed by law to enable it to obtain judicial relief from the decision of PERB, the Government is not entitled to such relief, and its petition therefor is accordingly dismissed.

Although this procedural objection was not made by PERB, we deem it important enough, if not entirely jurisdictional, to dispose of the matter on this ground, sua sponte.

But even if we are required to grant the Government the Review it applies for, and dispose of its Assignment of Errors on its merits, for the reasons stated below, we hold none of the errors listed in its Assignment has any merit.

---

[6] See Page 2, Paragraphs 1, 2, & 3 of PERB's "Notice of Proposed Findings of Fact".

The first three of such items urge upon this Court that it set aside the decision of PERB because there is an absence of substantial evidence on the record as a whole to support PERB's conclusions. Therefore, we will treat all three of these items as a unit, the same error of the administrative body having been argued as applying to all three of them.

■ Substantial evidence has been defined as such evidence as constitutes more than a scintilla of evidence. "It means such relevant evidence as a reasonable mind might expect as adequate to support a conclusion." American Textile MFRS. Institute, Inc. v. Donovan, 452 U.S. 490, 101 S.Ct. 2478, 69 L.Ed.2d 185 (1981).

It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. American Textile MFRS. Institute, Inc. v. Donovan, supra; Illinois Central Ry. Co. v. Norfolk & Western R. Co., 385 U.S. 57, 87 S.Ct. 255 (1966); Universal Camera Corp. v. National Labor Rel. Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1981).

■ Moreover, the whole record must be examined to determine whether the evidentiary foundation of the determination by PERB was "substantial" and it is not enough that the evidence support PERB's determination was substantial when viewed in isolation. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.

■ This does not mean that PERB's findings should be disturbed merely because a different conclusion could be reached by the Court from the same set of inferences had the matter been before it de novo. Universal Camera Corp. v. National Labor Rel. Bd., supra at page 465. The agency's action may be set aside only where it is not supported by any rational basis. Branch v. Bryan, 18 V.I. 54 (D.C.V.I. 1980).

The first error listed is PERB's conclusion that the Government refused to give effect to Article VI, Section 3 of the agreement. This Article, in addition to requiring that all supervisors to whom the agreement applies enjoy all legal holidays mandated by 1 V.I.C. § 171, provides that "whenever any holiday falls upon a Saturday, it shall be observed on the preceding Friday". Both parties observed this requirement from the inception of the Agreement, July 15, 1981, to November 15, 1983, when the Government unilaterally abruptly stopped honoring it.

■ Not only is the evidence clear and uncontroverted that there was this unilateral change in performance of the contract by the Government (in fact, even by the Government's own admission), but we find that this action of the Government constituted a substantive evidentiary basis for PERB's conclusion that the Government refused to give effect to Article VI, Section 3 of the collective bargaining agreement.

Moreover, there is considerable legal authority to support us in the position we take.

In Caravelle Boat Co., 227 NLRB No. 162, 95 LRRM 1003 (1977) it was stated that "an employer violates his duty to bargain if, when negotiations are sought or are in progress, he unilaterally institutes changes in existing terms and conditions of employment." It was held that the respondent, Caravelle Boat Co.'s, unilateral change in the method of recalling employees, eliminating two paid holidays, transferring employees without recalling those on lay off, granting pay increases to employees, and laying off employees without notice to the Union, violated Section (8)(a)(5) and (l) of the LMRA.

Similarly, in Transmarine Navigation Corp., 152 NLRB No. 107, 59 LRRM 1232 (1965) where Union members were informed with respect to the closing of the terminal and the termination of their jobs after the respondent, Transmarine Navigation Corp., had made a unilateral commitment to become a minority member of a joint venture, it was held that at that point bargaining would reasonably be regarded as futile by the Union.

It was further held that "when a union is advised of an employer's final decision with respect to a matter that should be the subject of collective bargaining, it is not incumbent of the Union to make a useless request to bargain about something that has already been accomplished".

In Insulating Fabricators, Inc., 144 NLRB No. 125, 54 LRRM 1246 (1963), it was held that where Respondent, Insulating Fabricators, Inc., unilaterally announced merit increases for five employees without negotiating with the Union, said "Announcement amounted to a statement that the increases had been fully and finally decided upon and would be put in effect". Thus, the Union could reasonably assume that it was futile for it to object thereto. Accordingly, "the unilateral granting of merit and other increases by the Respondent not only constitutes evidence of the Respondent's overall bad-faith bargaining, but was itself a violation of 8(a)(5)" of the LMRA.

24

In Granite City Steel Co., 167 NLRB No. 35, 66 LRRM 1070 (1967) where the employer unilaterally attempted to limit the employee's access to their representative, it was held that unilateral action—whether it be in regard to a working condition such as grievance procedure or matters of monetary value such as wages or bonus—is in derogation of the statutory representative's bargaining authority and destructive of the bargaining process. And whether or not there is a violation does not rest on a basis of improper motivation. To the same effect is NLRB v. Katz, 82 S.Ct. 1107 (1962).

■ The second error listed is PERB's conclusion that either the opinion of the Attorney General or the letter of the Chief Negotiator in writing the Union to renegotiate the provision had the effect of abrogating Article VI, Section 3 of the agreement. It is clear from the record that the invitation to renegotiate came after, not before, the unilateral action was taken by the Government. Therefore, virtually all of the authorities cited in Item One above, especially those which emphasize that bargaining must precede final decisive action, not the other way around, apply here as well.

■ The third error of this class listed by the Government is PERB's conclusion that the Government did not properly bargain with the Union. As this is a mere recycling or regurgitation of the language used in Items One and Two, what we said with regard to those items equally applies to this Item (three) of the Assignment.

On the whole, then, as to the first three errors listed, that there is an absence of substantial evidence on the record considered as a whole to support PERB's conclusions, we hold that the contrary is the case.

We turn now to the fourth and last error listed by the Government as made by PERB, in that PERB concluded that Article VI, Section 3 of the agreement does not have the effect of creating an additional holiday for MEBA employees without proclamation by the President or Governor as required by 1 V.I.C. § 171, and is therefore not in violation of 24 V.I.C. § 374(a).

Clearly, this disputed section does not create a new holiday. "Holiday" has been defined as "a religious festival; a day set apart commemorating some important event in history; a day of exemption from labor"—Webster; Black's Law Dictionary 659 (5th Ed. 1979); while "legal holiday" is defined by Black as "a day designated by law as exempt from judicial proceedings, service of process, demand and protest of commercial paper, etc.; a day

designated by legislative enactment for purpose within meaning of term 'holiday'" above defined.

■ This provision is none of these things. But even if it were, it must be borne in mind that both the Legislature and the Governor, who constitute the lawmaking authority of the Territory, approved the Collective Bargaining Agreement. And 1 V.I.C. § 171 clothes the Governor, acting alone, without the concurrence of the Legislature, to proclaim holidays. On this pivotal question, PERB had this to say in its decision:

> We respectfully disagree with the Government that 1 V.I.C., Section 171 specifically restricts the Governor from negotiating the provision in question. Section 171 of Title 1 contains no restrictive language. To the contrary, it authorizes the Governor to proclaim additional holidays. If it is within the Governor's discretion to proclaim additional holidays, then surely it is the Governor's prerogative to negotiate in a collective bargaining agreement additional holidays. Further, this provision does not create a new legal holiday. It does not require the closing of Government offices. It is simply a benefit provision granting additional pay for work performed on Fridays which precede a Saturday holiday. Such a provision is within the scope of lawful bargaining subjects and nothing in 1 V.I.C., Section 171 precludes bargaining over the matter. See, State of Maine v. Maine Labor Relations Board, 413 A.2d 510, 108 LRRM 2811 (Me. 1980) (in absence of statutory proscription, holiday work is mandatory bargaining subject); Americans United For Separation of Church and State v. County of Kent, 107 LRRM 2051 (Mich. Ct. App. 1980) (in absence of indication that it is to be exclusive, statute listing legal holidays does not preclude public employer from negotiating additional holidays); In re County of Westchester, 91 LRRM 2952 (N.Y. Sup. Ct. 1976) (statute creating Martin Luther King day as Sunday holiday does not preclude arbitrating whether following Monday should be paid day off); 38 Opinions of the Montana Attorney General No. 116 (12/10/80) (statute listing legal holidays does not preclude negotiation of additional paid holiday).

We agree.

26

■ Finally, the Government, although it did not specifically list this item in its Assignment of Errors made by PERB, contended that the holiday provision violated Section 374(b) of the Act by unduly interfering with the Government's right to supervise its employees and maintain efficiency of operations. It gives as its reason for this contention its interpretation that Article VI precludes supervisors from working on Fridays preceding Saturday holidays. But all this section does is to give a contract benefit, to require pay on such Fridays as if they were holidays for the purpose of the contract, i.e., double pay. As PERB mentioned in its Order, this provision does not necessarily cause employees to be unsupervised or offices to go unstaffed.

## IV. CONCLUSION

We therefore hold that the Government, having failed to present its objections to PERB, and thereby give to PERB an opportunity to consider and correct any error the administrative body may have made, before seeking judicial relief, has no legal standing to seek judicial relief from the Decision of PERB.

We further hold that even if the Government is properly before this Court, there is no merit in any of the items included in its Assignment of Errors.

## JUDGMENT

Based on Memorandum Opinion issued on even date, and the Court being fully advised and satisfied in the premises, it is hereby

ORDERED, ADJUDGED AND DECREED That the Order entered by the Government of the Virgin Islands Public Employees Relations Board in above-titled matter, dated March 1, 1984, is AFFIRMED.