CHARLES TURNBULL, Petitioner

v.

ALPHONSE S. HOLDER, Commissioner of Property &
Procurement, Government of the Virgin Islands,
Respondent

## Civil No. 381-1973

## District Court of the Virgin Islands

Div. of St. Thomas and St. John

## December 18, 1974

ARNOLD M. SELKE, ESQ., St. Thomas, V.I., *for petitioner*

CURTIS E. TARTAR, ESQ., Assistant Attorney General of the Virgin Islands, St. Thomas, V.I., *for respondent*

CHRISTIAN, *Chief Judge*

## OPINION

This is an appeal from a decision by the Government Employees Service Commission (GESC), denying petitioner compensation for the period from date of his suspension from work to date of his resumption of duties.

The course of events are these. Petitioner is an employee of the Government of the Virgin Islands, working in the Department of Property & Procurement. On March 10, 1972, he was arrested and charged with grand larceny. Two detectives had encountered him removing government property from a government warehouse very late at night and loading it into his car. On March 20, 1972, a detective's report was filed which specified the details of the observation and arrest. Petitioner claimed that he had had permission to remove the property, but the Commissioner of Property & Procurement, and another of petitioner's superiors denied that such permission had been granted.

On April 5, 1972, petitioner was notified by the Commissioner that he was suspended without pay "up to and including [the date of] the adjudication of your case," pursuant to the Virgin Islands Rules and Regulations § 452–222. On April 10, 1972, the Commissioner, in response to a letter from petitioner's counsel, notified petitioner of his right to appeal to the GESC pursuant to 3 V.I.C. § 530. On May 8, 1972, a second Notice of Appeal was filed with the GESC evidently prompted by the May 4 letter.

On August 2, 1972, the GESC notified petitioner that his appeal would be heard on September 7, 1972. He was accorded that hearing but the GESC decided to take no ac-

tion on the matter until a decision was rendered in the district court on the pending criminal charges.

On October 27, 1972, a jury acquitted petitioner of the criminal charges. On October 30, 1972, petitioner's counsel notified the GESC of the verdict. On November 14, the GESC again notified petitioner of a new hearing on December 7, 1972. On the morning of that day, petitioner's counsel committed suicide. A new hearing date was set for January 4, 1973. On January 4, 1973, petitioner notified the GESC of his intention to return to work.

On January 8, 1973, petitioner received word from the Commissioner advising that although the latter had not yet received the decision of the GESC concerning the January 4 hearing, he would allow petitioner to resume his employment.

On January 20, 1973, petitioner reported for work. Some seven months later on August 2, 1973, an Opinion and Order was rendered by the GESC. While acknowledging petitioner's acquittal, the GESC stated, nevertheless, that:

[n]ot the charge of a felony but the particular circumstances of his arrest are controlling before this Commission, to wit, that he was a government employee who was removing government property of considerable value from his Department warehouse, outside business hours, without permission.

THE GESC concluded that:

[t]he above-described conduct by Appellant Charles Turnbull, which he tried to explain away, but did not deny, regardless of the District Court resolution of the criminal charge is detrimental to the public interest, it led to a reasonable belief by the department head that the employee had committed a crime directly relevant to his job and necessitated his immediate suspension pending adjudication before this Commission.

Citing Pruzan v. Board of Education of New York, 209 N.Y.S.2d 96 (N.Y.Sup.Ct. 1960), the GESC held that the Commissioner had acted within his discretion and "for

good cause" in suspending petitioner pending adjudication of the "disciplinary charges". It sustained the suspension "up to and including that date of hearing before this Commission," but ordered petitioner's reinstatement "from January 5, 1973 or as soon thereafter as he reported for work having been advised by this Commission to do so. . . ." It is for review of this decision of the GESC that petitioner is before the Court.

 To the extent that the Commission in sustaining the action of the Commissioner of Property & Procurement ruled that the latter official was himself empowered to suspend petitioner without pay, the Commission was in error. See Opinion filed this date, Sydney Gunthorpe v. Government Employees Service Commission, Civil No. 74-37, Division of St. Thomas & St. John. Section 530 does not authorize "immediate suspension" by the department head. It is the action of the GESC in cases in which the employee challenges the proposed action that actually works the suspension, dismissal or demotion of the employee as the case may be. In view of this Court's ruling in Gunthorpe, supra, it is necessary that Virgin Islands Rules and Regulations, Title 3, § 452–222 (suspension) and Title 3, § 452–223 (demotion) be appropriately amended to conform to Gunthorpe. Additionally, the rules and regulations as they pertain to dismissals (Title 3, § 452–225) stand in need of updating, and some clarification. In the instant case there is still to be considered, nonetheless, the validity of the GESC's order insofar as it affirmed and finalized the action taken by the Commissioner of Property & Procurement. I move then to the points raised by that question.

In challenging the findings and Order of the GESC, petitioner first contends that the evidence before that body was insufficient to support the determination that suspension was warranted. (See brief of petitioner, page 3.) Before passing on this argument, however, it would be well

if, once again, this Court's role in these matters is made clear.

■ ■ Title 5 § 530 (b) states in unequivocal terms that decisions of the GESC are "final". Notwithstanding that unqualified language, however, this Court unquestionably has power to review the Commission's decisions. The grant of that power is to be found in 5 V.I.C. § 1421 et seq. Those sections are so well known and so oft quoted that they need not be set forth here. It is also well settled that this Court's review of the decisions of GESC and other administrative bodies extends not only to the legality of the proceeding and the application of the law by the agency, but also to the factual findings and conclusions reached. The standard of review is again a matter which does not require discussion. It is clear that the determination reached by the administrative agency will not be set aside where it appears that such determination is based upon relevant evidence which a reasonable mind might accept as adequate to support the conclusions. Donastorg v. Government Employees' Service Commission, 285 F.Supp. 111, 6 V.I. 368. Thus, the review by this Court is narrowly limited. If there is substantial evidence to sustain the agency's action, its decision will not be disturbed. "The test is not how [this Court] would decide the issue based on the evidence in the record but whether substantial evidence in the record supports the decision" of the agency. Polcover v. Secretary of the Treasury, supra, at page 1231.

■ Viewed in the light of the foregoing, I have little difficulty in finding that substantial evidence supports the conclusion of the GESC that the Commissioner of Property & Procurement acted properly in proposing the suspension of petitioner. That judgment will not be disturbed.

■ Petitioner makes much of the fact that he was acquitted of the parallel criminal charge filed against him,

98

in the face of evidence substantially identical to that before the GESC. However, the difference between the burden of proof which the Department of Property & Procurement had to bear to have its position sustained by the GESC—i.e., that "cause" existed—and "proof beyond a reasonable doubt", the legal burden of the government in criminal prosecutions, is critical.

The law does not require that the proof which might lead to an administrative determination that removal would be for the best interest of the IRS be of the same quality as would be necessary to convince a jury beyond a reasonable doubt to convict in a criminal case. The jury, to be sure had not been convinced beyond a reasonable doubt but the Commissioner could well have concluded that the evidence was substantial enough to justify a refusal to reinstate. See Finfer v. Caplin, 344 F.2d 38, 41 (2d Cir. 1965), cert. den. 382 U.S. 883 (1965).

 On this review, petitioner complains, for the first time, that his suspension was for a period in excess of 30 days and had not been approved by the Director of Personnel as mandated by § 452–222 of the Rules and Regulations. I decline to consider this contention, for, as respondent points out, petitioner raised no objection to this procedural defect before the GESC. Not having claimed the benefit of that section of the Rules and Regulations at the agency level, he will not be heard in that vein by this Court as it reviews the determination of the administrative agency.

 A further procedural problem remains and begs mention, i.e. the sixteen-month delay between the giving of Notices of Suspension and the final decision of the GESC after a full hearing. Section 530(b) specifically provides that "upon appeal, the GESC shall meet promptly and afford the department head and the employee an opportunity to be heard".

In a similar case, Polcover v. Secretary of the Treasury, supra, a former IRS agent sued the Secretary of the Treasury for an injunction restoring him to his position and for back pay. In that case there was a thirty-seven month delay between the time the Regional Commissioner informed the plaintiff that his appeal to the Civil Service Commission would be held in abeyance until the resolution of the criminal action pending against him, and the time the final decision of the Commission was rendered after a full hearing following plaintiff's acquittal.

As the Court noted in that case, the parameters of the term "promptly" in the handling of employees' appeals must be "developed in a practical vein". Id. at 1232. Nowhere in the Rules and Regulations is there a proscription of delay caused by a situation such as that encountered in this case. Moreover, as the Polcover court pointed out, there are dangers inherent in subjecting an employee to an administrative hearing while a criminal action is pending. Specifically, the accused may be forced to disclose, as his necessary defense in the administrative hearing, the evidence he would use at his criminal trial—to the prejudice of that defense at trial. See Silver v. McCamey, 221 F.2d 873, 874–75 (D.C. Cir. 1955). In any event, there is nothing wrong, per se, with a decision by an administrative agency, in its discretion, postponing the hearing of an appeal until a result has been reached in a corresponding criminal proceeding, and in our situation, § 452–222 specifically provides for such postponement. The controlling test is whether any demonstrable prejudice has been shown to have been caused by the delay. I find none here. I conclude that the GESC did not act unlawfully when it delayed its decision.

However, in Polcover, the Court mentioned that once the criminal action against plaintiff in that case had been terminated, a decision had been rendered within a "reasonable time". 477 F.2d at 1232. Five months elapsed be-

tween plaintiff's acquittal and the issuance of the Hearing Officer's "Report of Findings". Id. at 1230. In the instant case the delay between petitioner's acquittal and the GESC's decision was twice as long. I think that such an hiatus is both unjustifiable and unreasonable. In any event, because petitioner did not object to the delay and further, because, in fact, he began working again at his former job seven months before the GESC rendered its opinion, I do not feel that the delay was so serious that it compels reversal or calls for more than this comment. Nevertheless, GESC would do well, as it has been previously admonished, to handle these appeals more expeditiously. The recurrence of so great a delay will not be looked upon with favor by this Court.

In all respects other than those discussed above, the procedures followed in this case in suspending petitioner appear correct. Notice was given with adequate time to prepare. Reasons for the suspension were given in advance of the hearing thus allowing time for rebuttal. Effective opportunity to defend, including cross-examination and confrontation of adverse witnesses was allowed. Petitioner was permitted the aid of retained counsel and an informal decision was rendered by an impartial decision maker with reasons for the result being given. Cf. Goldberg v. Kelly, 397 U.S. 271 (1970); Roth v. Board of Regents, 310 F.Supp. 972 (W.D. Wis. 1970), rev'd on other grounds, 408 U.S. 564 (1972). And see Simmonds v. GESC, D.C.V.I., Div. of St. Croix, Civil No. 269/1973 (filed May 15, 1974).

I find nothing improper with the decision of the Commissioner insofar as it recommends withholding of petitioner's pay for the period of suspension. The mere fact that the Code says nothing about withholding salary does not gainsay the authority to do so in proper cases. Were I to agree with petitioner, that because the Code does not, in express terms, allow suspension of pay, the Commissioner

cannot propose such action to the GESC, I would be effectively stripping the executive arm of government of an inherent right and would reduce the power to suspend to an empty and meaningless farce.

■ While the decision of the GESC upholding the suspension of petitioner by the Commissioner of Property & Procurement is affirmed, I conclude on all the foregoing that the decision of the Commission denying back pay to the petitioner cannot stand. Petitioner's suspension in the words of the Commissioner was "up to an including the adjudication of your case". It would follow therefore, that with the entry of the judgment of the Court finding him not guilty, his suspension was at an end. The GESC undertook to extend his suspension up to and including the date of their January 4, 1974 hearing, but this I am satisfied they are not empowered to do. I conclude, therefore that the petitioner's suspension was at an end when he was exonerated of the criminal charges. He cannot properly be made to suffer loss of pay beyond that period. His restoration to duty status therefore follows as a matter of course.

I conclude that by reason of the action of the GESC which is here upheld, this petitioner was on non-duty status and therefore not entitled to pay from April 5, 1972 up to and including October 27, 1972. From and after the latter date, however, he is entitled to be paid by the Government at the rate he was being paid at the time of his suspension, up to and including January 8, 1973. From the total sum to which he is entitled for the said period must be deducted such sums earned by him from other sources of employment within the said period. The government will be required to schedule a hearing for the purpose of adducing evidence to determine the amounts earned by petitioner from sources outside of the Virgin Islands Government between October 27, 1972 and January 8, 1973.