SYDNEY GUNTHORPE, Petitioner

v.

GOVERNMENT EMPLOYEES SERVICE COMMISSION,
Respondent

Civil No. 74-37

District Court of the Virgin Islands

Div. of St. Thomas and St. John

December 18, 1974

BIRCH, DEJONGH and FARRELLY, ESQS. (ALEXANDER A. FARRELLY, of counsel), St. Thomas, V.I. *for plaintiff*

IVE A. SWAN, ESQ., Assistant Attorney General of the V.I., St. Thomas, V.I. *for defendant*

CHRISTIAN, *Chief Judge*

## OPINION

The Court is called upon to review orders entered by the Government Employees Service Commission (GESC) sustaining the proported dismissal of the petitioner from the position of business manager of the Virgin Islands Department of Education by the commissioner of that department. The questioned firing took the form of a letter dated August 23, 1973, supplementing an earlier letter of August 17, in which the commissioner notified the petitioner of his discharge effective August 21, 1973.

In essence but two questions are presented for review. The first requires that Title 3, V.I.C., § 530 be construed to determine whether or not the commissioner was authorized to summarily terminate petitioner's employment, cutting him off from duty status and pay prior to a hearing and determination by the GESC. The second calls for a determination of whether or not the commission erred in sustaining the dismissal action of the Commissioner of Education.

It appears from the record that petitioner was afforded two appearances before the commission. He was first before that body on November 8, 1973, for a hearing on the first question posed above. That decision went against petitioner

and in favor of the commissioner's action. Petitioner's second appearance was on December 6, 1973, at which time the commission heard evidence by petitioner in support of his contention that dismissal was unwarranted on the facts of the case. Again, petitioner received an adverse ruling. It should be noted that at the second hearing petitioner appeared and testified. The commissioner did not appear and no one testified on his behalf, although one of the commissioner's ranking subordinates was present at the hearing ostensibly representing the commissioner. If, then, there is evidence which supports the commission's finding that petitioner's dismissal was warranted, it must appear in the testimony of petitioner on direct and cross-examination, as well as the exhibits admitted in evidence.

■ We first deal with the procedural question, the proper construction of section 530. As amended effective February 27, 1962, section 530 reads,

(a) when a department head considers to (1) dismiss or (2) demote or (3) suspend for a period over 30 days a regular employee, for cause, he shall furnish the employee with a written statement of the charges against him. The employee shall have 10 days from the date of receipt of said statement of charges to appeal the proposed action to the GESC. Such appeal shall be in writing and a copy shall be furnished to the department head.

It is contended by petitioner that properly construed, section 530 does not give the department head the right to dismiss an employee, as the Commissioner of Education assumed in this case and undertook to do. The commissioner, petitioner argues, makes no more than an initial decision, tantamount to saying no more than that in his opinion the acts and conduct of the employee which he has set out in the required statement of charges calls for the employee's dismissal. At that point, the argument continues, two courses are open to the employee. He may accept the decision of his department head, in which event dismissal

follows automatically, or, within 10 days of receipt of the statement of charges, he lodges an appeal with the GESC challenging the action which his superior proposes. Should the employee pursue the second course, his dismissal, or some reduced penalty, follows only if after a hearing before the GESC in which both department head and employee are given the opportunity to be heard, to call witnesses, and be represented by counsel, that agency sustains, in whole or in part, the decision of the department head as proposed. It would follow, assuming the correctness of this interpretation of section 530, that pending the decision of the GESC, the employee remains on a duty status and with full pay. Accordingly concludes petitioner, Commissioner Haizlip's letter of August 23, 1973, can serve as no proper warrant for the termination of his employment and the cessation of his pay. I am in full agreement with petitioner on this construction of the section in question. (I note from the record sent up for review that the Attorney General of the Virgin Islands has previously reached a like conclusion and by Memorandum dated October 29, 1973, has so advised all heads of executive departments of the government.)

Admittedly, the construction here given to section 530 may be found to be at variance with what had been taken for granted as accepted and proper practice. Indeed, it would not be surprising to find expressions of this very court contrary to the views now laid down. Any such conflict is more than likely chargeable to what had heretofore been the conventional wisdom, that department heads could suspend, demote or dismiss, coupled with the language used in subsection (e) of section 530,

If the commission orders restoration to duty and pay, and if it does not order suspension, the employee shall receive full compensation for any period for which he did not receive compensation pending hearing of the appeal.

Taken at face value, those words of section 530(e) would seem to be at total war with what I have held above, for obviously the commission would have no need to order "restoration to duty" and "pay" if, in fact, there had been no prior separation from service. This apparent conflict I find myself at a loss to resolve. It may well be no more than a carry over from the notion expressed in the earlier statute (3 V.I.C. § 531(c)), but, however, it may have found its way into the present statutory scheme, I resolve the conflict in favor of the employee since that is the person, beyond all doubt, whom this statute seeks to protect. So it is with all similar enactments.

The idea that a department head does not dismiss but rather, in effect, recommends dismissal is not novel. Indeed, the prior law actually read,

A department head may recommend the dismissal of any regular employee in his department when he considers that the good of the service will be served thereby.

Under that legislative plan such recommendation ultimately reached the appointing authority, i.e. the Governor of the Virgin Islands, who then, upon the recommendation of the Government Secretary, either approved or disapproved the recommended dismissal. Thereafter, under the formerly existing section 531, the "dismissed or demoted" employee could take an appeal to the GESC. If the agency determined that the dismissal was prompted by certain stated reasons or motives, it then recommended the employee's reinstatement, a recommendation which was directed to the appointing authority, again the Governor, who had the final say. Possibly it was to get away from this "appeal from Caesar to Caesar" that the February 27, 1962 amendment, which revised and consolidated the earlier sections 530 and 531, came into being. What may have been carried over into the new law was the old section 531(c) which provided that if the final decision of the appointing

authority, again the Governor, is in favor of the employee, the Chief Executive shall reinstate him and shall approve the payment of any salary or wages lost by him.

The interpretation of the present section 530, here adopted, draws support from the procedures established for the governance of the United States Civil Service Commission. (See 5 Code of Federal Regulations, Part 752, passim.) We there find that the adverse action sought to be taken against an employee is "proposed action". It is further to be noted that during the period of challenge of such proposed action, the employee is "entitled to be retained in an active duty status" even if a temporary assignment to other duties is found to be necessary in the interest of the government. In a case of suspension, should the circumstances indicate that an employee cannot be kept on an active duty status, the Civil Service Commission's regulations call for the institution of a separate and different adverse action to bring about immediate suspension and lays down certain procedures to be followed in such event.

In sum then, I conclude that neither the letter dated August 17, 1973, nor the letter dated August 23, 1973, addressed to petitioner by the Commissioner of Education, served to terminate his employment or to remove him from duty status and full pay. Petitioner therefore is entitled to receive, the compensation which he had been denied from August 23, 1973 to December 20, 1973, the date on which the commission entered its order sustaining the proposed dismissal, if indeed, the commission's action in this regard may be sustained.

█ It will at once be realized that this ruling, now more than ever, makes it absolutely necessary that the GESC obey its statutory mandate and act with promptness in hearing and determining employees' appeals. This Court has on numerous occasions exhorted it to do so, most recently in Turnbull v. Holder, 11 V.I. 93. I would merely

reiterate this word or admonition and add that the appointing authority, in selecting persons to serve on this highly important commission, do so with extreme care, particularly having in regard that the persons selected, qualifications apart, be of that group who can and will unstintingly give of their time in contributing to the effort of maintaining an ordered, fair, and equitable personnel merit system. In the instant case, I find it a matter to be deplored that the commission virtually goaded counsel into limiting their remarks and bringing the hearing to a speedy conclusion for no more sound reason than that one or two members of the commission wanted to catch a plane and avoid an overnight stay on the island on which the hearing took place. This unseemingly disregard of an employee's right to a full and proper presentation of his case hardly squares with the purpose for which the commission was formed. Fortunately, I do not regard the impingement in the employee's rights in this case to have been so grave as to have deprived him of a fair hearing.

Each side in briefs filed with the court took pains to deal with the issue of whether or not section 530 should receive retroactive application or prospective application only. I do not understand that question to have been presented here. The statute under consideration has been extant, since, as we have seen, February of 1962. What may have been in the minds of the parties was whether the Commissioner of Education's action taken on August 23, 1973, was to be judged by the GESC in the light of the October, 1973 Memorandum of the Attorney General. I encounter no problem in concluding that on November 8, the commission should have been guided by the Attorney General's opinion. It was nothing short of arbitrary and capricious for it to indulge itself in one last erroneous interpretation of law.

109

On his second contention, petitioner cannot fare as well. On my consideration of the record handed up for review, I cannot conclude that the substantial evidence needed to support the agency's findings is absent. It little matters that respondent called no witnesses or produced no evidence. It was certainly within the competence of the commission to make a determination one way or the other, based solely on the evidence brought out on direct and cross-examination of petitioner himself. Even as to the question of whether or not the punishment of dismissal was overly severe, the GESC's judgment is not to be disturbed. True, the commission might have, had it deemed such action warranted, dealt in a less stringent manner with petitioner. Yet I am totally unable to reach the conclusion that its failure to so act was such grave abuse of discretion as to authorize reversal. I conclude therefore that the commission acted within its proper bounds in sustaining the decision of the Commissioner of Education to dismiss petitioner.

Let judgment be entered in accordance with the foregoing.