IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
January 10, 2024 05:31 PM
SX-2009-CV-00320
**TAMARA CHARLES**
**CLERK OF THE COURT**

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| OLIVINA CHARLES, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> KELLY'S CLEANING SERVICES and ) <br> COMMISSIONER OF DEPARTMENT OF ) <br> LABOR, ) <br> ) <br> Respondents. ) | **CIVIL NO. SX-2009-CV-00320** <br><br> PETITION FOR WRIT OF REVIEW <br><br> **2024 VI SUPER 2U** |

## MEMORANDUM OPINION AND ORDER

¶1    By Order entered November 5, 2009 ("Order Granting Writ"), the Court granted Petitioner Olivina Charles's petition for writ of review ("Petition"), filed June 30, 2009.[1] The Petition sought relief from Respondent Virgin Islands Department of Labor's ("DOL" or "Department") Final Order dated June 1, 2009. Therein, the Commissioner of Labor ("Commissioner") denied Charles's motion for reconsideration and affirmed the Decision and Order dated August 26, 2008, that held that Charles was not wrongfully discharged by Respondent Kelly's Cleaning Services ("Kelly"). Respondent DOL filed a Response to the Petition for Writ of Review and a Motion to Dismiss on July 23, 2009. Petitioner filed a Motion on June 26, 2023, asking the Court to enforce its Order Granting Writ and to compel Respondent Department to produce the record of all proceedings. In fact, the Court had been in possession of the entire DOL administrative record since November 13, 2009. Respondent Kelly filed no brief. For the reasons that follow, the Court affirms the Department's Final Order dated June 1, 2009.

---

[1] Petitioner's Petition was entitled "Notice of Appeal." While a writ of review is akin to an appeal, they are not the same. The right of appeal means the right to require an appellate court to review a lower court's decision. On the other hand, a right of petition is the right to request an appellate court to review a lower court's decision – a request which the appellate court can deny or grant as it deems appropriate. *See Rozkydal v. State*, 938 P.2d 1091, 1094 (Alaska Ct. App. 1997). An appeal is taken by filing a notice of appeal with the clerk of the appellate court, as Charles did here, referencing Title 24 V.I. Code Section 70(a). However, by her "Notice of Appeal" Charles did ask the Court to issue an "Order of a Writ of Review" and the Court accordingly issued such an Order. Charles needed only to request that the Court review the administrative decision and the Court should have granted the review on appeal without the need to issue a "writ of review." These procedural anomalies do not affect the Court's analysis or its conclusions, which are governed by the relevant statutes and jurisprudence as set forth herein.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2      On June 30, 2009, Petitioner filed her Petition, asking the Court to review and vacate the Department's June 1, 2009 Final Order in *OLIVINA CHARLES v. KELLY'S CLEANING SERVICES, INC.,* (WD-030-2003-STX). The record shows that Respondent Kelly conducted business with the Virgin Islands as a janitorial cleaning service. At all times pertinent to this matter, Kelly operated under a contract executed by a federal agency pursuant to the McNamara-O'Hara Service Contract Act of 1965 ("SCA").[2] In November 1998, Kelly hired Petitioner Charles as a janitor. Charles's duties consisted of cleaning various offices within the Almeric A. Christian Federal Building on St. Croix ("Federal Building"). For several months preceding Kelly's termination of Charles's employment, Kelly paid Charles at the rate of $6.73 per hour, in addition to $350 per month. However, Charles should have been paid $6.99 per hour, in addition to an allotment of $372 per month as established by the U.S. Department of Labor pursuant to the SCA.

¶3      In January 2001, Kelly's president, Orneth La Corbiniere, met with Charles regarding concerns about Charles's behavior and work performance. La Corbiniere was concerned that Charles was not cleaning some bathrooms properly, that her attitude toward her supervisor was not respectful, and that she was leaving work earlier than scheduled. La Corbiniere informed Charles, as well as other employees, that a recent quarterly inspection of the Federal Building by an official of the U.S. General Services Administration identified several areas of poor performance. The areas of poor performance identified by the official included the restrooms and the lobby, areas within the scope of Charles's responsibility. At some point in 2002, Charles became aware of the wage rate for janitors as prescribed by the SCA. Charles then conferred with other employees and determined that the other employees had been underpaid as well. Charles spoke to La Corbiniere regarding the underpayment, which triggered discord between her and La Corbiniere.

¶4      In a letter addressed to La Corbiniere, dated December 20, 2002, the U.S. General Services Administration's property manager, Stanley R. Brown, identified several areas in the

---

[2] The McNamara-O'Hara Service Contract Act of 1965 requires general contractors and subcontractors performing services on prime contracts that exceed $2,500 to pay their service employees in various classes no less than the wage rates and fringe benefits prevalent in the locality as determined by the U.S. Department of Labor.

Federal Building that were dirty and required immediate attention. Charles had been responsible for cleaning the areas Brown identified in his letter to La Corbiniere.

¶5 On several occasions during Charles's tenure, La Corbiniere observed her not performing work while on the job. La Corbiniere also received complaints from Charles's supervisor, Pauline Garry, that Charles was insubordinate and argumentative. On March 13, 2003, La Corbiniere addressed Charles's alleged insubordination toward Garry at a staff meeting, as well as Charles's alleged failure to properly perform all assigned tasks. At the meeting, Charles acknowledged that there was a long-standing feud between herself and Garry, and that the rift would continue. La Corbiniere notified Charles that further complaints would result in her immediate termination.

¶6 On March 19, 2003, La Corbiniere informed Charles that she had received a complaint from a federal employee alleging that Charles had not emptied the employee's garbage and had observed Charles reading a newspaper. La Corbiniere terminated Charles for causing injury to the business because of her offensive conduct towards employees of the federal government, performing work assignments in a negligent manner, and engaging in conduct that made her coworkers unable to work with her.

¶7 On March 26, 2003, Charles filed a written complaint with the Virgin Islands Department of Labor alleging that she was discharged from her employment with Kelly in violation of the Wrongful Discharge Act ("WDA").[3]

---

[3] In an action brought under the WDA, "a plaintiff need only prove that the defendant was his employer and that he was discharged, while the defendant must affirmatively prove that the plaintiff had been discharged for a permissible ground, such as misconduct. … [T]his pleading regime is based on the plain text of the VIWDA, which is drafted in a way which essentially presumes that all discharges are wrongful unless the defendant proves that the employee was dismissed for one of the nine statutorily enumerated permissible reasons." *LIAT (1974), Ltd. v. Cherubin*, 2022 VI 21 ¶18 (V.I. 2022) (citing *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 544 (V.I. 2015). Those nine statutorily enumerated permissible reasons are as set out in 24 V.I.C. § 76(a), as follows:

(a) Unless modified by union contract, an employer may dismiss any employee:

(1) who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer;

(2) whose insolent or offensive conduct toward a customer of the employer injures the employer's business;

(3) whose use of intoxicants or controlled substances interferes with the proper discharge of his duties;

¶8      On February 6, 2008, the matter came on for a formal hearing. Administrative Law Judge ("ALJ") James W. Kitson presided over the hearing and heard testimony from Olivina Charles and Orneth La Corbiniere, as well as Linda Valerino and David Francis who testified on behalf of Charles. The ALJ adjourned the hearing *sine die*. The matter reconvened and was heard to its conclusion on March 19, 2008. After hearing the testimony and considering the evidence, on August 26, 2008, the ALJ issued his Decision finding that while La Corbiniere's reliance on 24 V.I.C. § 76(a)(2) and § 76(a)(9) for terminating Charles was unwarranted, there was sufficient evidence on the record to establish that Charles performed her work negligently under § 76(a)(5) and that she was, therefore, lawfully terminated for cause. The ALJ rejected Charles's contention that she was unlawfully terminated for exposing La Corbiniere for underpaying employees, finding the record devoid of "any tangible nexus tethering [Charles's] actions in exposing this practice to [La Corbiniere's] decision to discharge [Charles]."

¶9      On September 8, 2008, Charles filed a Motion for Reconsideration of the August 26, 2008 Decision and Order with the Commissioner of Labor. In the Final Order dated June 1, 2009, the Commissioner denied Charles's motion and affirmed the ALJ's Decision. Charles filed her Petition here on June 30, 2009.

¶10     In her Petition, Petitioner argues that: (1) the Court should accord preclusive effect to a prior finding made by the Virgin Islands Employment Security Agency ("VIESA") that Petitioner did not engage in misconduct under 24 V.I.C. § 304(b)(3); (2) the Decision is unsupportable based on the substantial evidence of the record as a whole; (3) the ALJ's Decision erroneously states that "Pauline Garry James attended as a witness for Respondent" despite the fact that James never testified at the hearing; and (4) the ALJ's Decision should address

---

(4) who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;

(5) who performs his work assignments in a negligent manner;

(6) whose continuous absences from his place of employment affect the interests of his employer;

(7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;

(8) who is dishonest; or

(9) whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him.

24 V.I.C. § 76 (a).

Petitioner's objection to the ALJ's ruling at the outset of the hearing that Petitioner had the duty to go forward.

## LEGAL STANDARD

¶11    V.I. Code Ann. tit. 24, § 70(a) allows any person aggrieved by a final order of the Commissioner of Labor granting or denying in whole or in part the relief sought to "obtain a review of such order by filing in the Superior Court ... within 30 days of its issuance, a written petition praying that such decision of the Commissioner be modified or set aside." *Id.* § 70(a). Charles timely filed a Petition on June 30, 2009. Therefore, the Superior Court has jurisdiction over the Department of Labor's June 1, 2009 Final Order.

¶12    In granting a petition for review under § 70(a), the reviewing court will not consider any objection not raised before the Commissioner unless the failure or neglect to raise the objection is "excused because of extraordinary circumstances." § 70(b). Furthermore, the Commissioner's factual determinations, "if supported by substantial evidence, shall be conclusive." *Id.*

¶13    Where the Legislature has not explicitly required courts to apply a more deferential standard of review, the Superior Court exercises plenary review of an agency's conclusions of law. *Bryan v. Fawkes*, 61 V.I. 201, 226-27 (V.I. 2014). In the instant case, because the Legislature did not require a specific standard of review under § 70(b) for the Department of Labor's conclusions of law, the Court reviews those determinations de novo. However, § 70(b) does require that the Superior Court review all factual conclusions under the substantial evidence standard.

## DISCUSSION

### A. Issue preclusion does not apply to the instant case.

¶14    Charles relies upon the doctrine of issue preclusion in seeking this Court to set aside the Department's decision that Charles was not wrongfully discharged under 24 V.I.C. § 76. In support of her argument, Charles urges this Court to note VIESA's decision that she was not disqualified for unemployment insurance benefits under 24 V.I.C. § 304(b)(3). VIESA found that Charles did not engage in willful or deliberate misconduct in connection with her work. This Court finds that the doctrine of issue preclusion does not apply to the instant case.

¶15    Issue preclusion, also known as collateral estoppel, prevents the relitigation of issues adjudicated in a prior action. *Stewart v. Virgin Islands Bd. of Land Use Appeals*, 66 V.I.

522, 547 (V.I. 2017). Under the doctrine of issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry,* 449 U.S. 90, 94 (1980). The policy behind issue preclusion is that "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Id.* Furthermore, issue preclusion reduces the attendant costs of multiple lawsuits, facilitates judicial economy, promotes judicial consistency, and fosters reliance on adjudication. *Id.*

¶16    The Supreme Court of the United States has traditionally favored application of common-law preclusion doctrines "to those determinations of administrative bodies that have attained finality." *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 111 (1991). In *Astoria Federal Savings and Loan*, the Supreme Court held:

> When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.

*Id.* (quoting *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422 (1966)).

¶17    Under Virgin Islands law, to bar relitigation of an issue under the doctrine of issue preclusion, an asserting party must demonstrate that: (1) the issue to be barred is identical to an issue actually and necessarily decided in the prior action; (2) the prior action was adjudicated in a decision that was final, valid, and on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party to the prior action; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior action. *Stewart,* 66 V.I. at 548. If any of the foregoing conditions is unsatisfied, then the application of issue preclusion is inappropriate, for said application would unjustly foreclose matters that have yet to be litigated. *See Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency,* 126 F.3d 461, 475 (3d Cir. 1997). Only the first condition is relevant to this dispute.

¶18    In determining whether the issues in the prior and subsequent proceedings are identical, reviewing courts must "look beyond the superficial similarities between the two issues to the policies behind the two actions." *Swineford v. Snyder Cnty. Pa.,* 15 F.3d 1258, 1267–68 (3d

Cir. 1994). Thus, only in the instance where the two actions promote similar policies will the two issues be identical for purposes of issue preclusion. *Id.*

¶19    The Territorial Court of the Virgin Islands has previously considered whether a finding of "misconduct" under 24 V.I.C. § 304(b)(3) precludes a wrongful discharge claim under Section 76(a). In the case of *Charles v. Daily News Pub. Co.*, 29 V.I. 34 (V.I. Terr. 1994), the court held that the issue of whether an employee engaged in willful or deliberate misconduct as determined by VIESA was not identical to the issue of whether the employee had been wrongfully discharged. In reaching this conclusion, the court recognized that while VIESA was interpreting 24 V.I.C. § 304(b)(3) to determine the employee's eligibility for unemployment insurance, a wrongful discharge claim required the court to decide the distinct statutory issue of whether the employee was terminated within the parameters of 24 V.I.C. § 76. *Id.* 29 V.I. at 36.

¶20    In *Harrilal v. Blackwood,* 44 V.I. 144 (V.I. Terr. 2001), the Territorial Court held that a finding of "misconduct" in an unemployment compensation proceeding, based upon the employee's involvement in an altercation with a co-worker, did not preclude the employee's wrongful discharge claim. The Territorial Court reasoned that "the analysis involved in a wrongful discharge action encompasses a separate set of policies and rights than a determination of unemployment benefits." *Id.* at 150. Further, the court held:

> Because the factual predicates for both questions involve different requirements, *i.e.,* a finding of misconduct for section 304(b)(3) versus the existence of one of nine scenarios for section 76(a), an administrative determination that Harrilal was ineligible for unemployment benefits does not inform a finder of fact in a subsequent proceeding whether or not she was improperly terminated.

*Id.* at 152.

¶21    As in *Harrilal,* the relevant inquiry here is whether Charles's VIESA and Wrongful Discharge proceedings present "identical" issues. The Court finds that there are factual and legal differences between the questions decided in Charles's VIESA proceedings and those decided in her Wrongful Discharge proceedings. Therefore, issue preclusion does not apply in the instant case.

¶22    In Charles's VIESA proceedings, the issue before the ALJ was whether Charles was ineligible for unemployment compensation benefits by reason of her willful "misconduct"

under Section 304(b)(3). By contrast, the issue before the ALJ in the Wrongful Discharge proceedings was whether Charles's conduct fell within one of the nine reasons permitting dismissal under Section 76(a). "Misconduct" as defined by the courts under Section 304(b)(3) is not included among the permissible grounds for termination under Section 76(a). Therefore, given that the ALJ in the VIESA proceedings was charged only with determining whether Charles's behavior constituted "misconduct" under Section 304(b)(3), the ALJ's decision never resolved which, if any, of the enumerated Section 76(a) grounds might apply to Charles's case. That question was presented for the first time to the ALJ in Charles's Wrongful Discharge proceedings.

¶23     Accordingly, the Court finds that the decision by the ALJ in the VIESA proceedings does not preclude the determination by the ALJ of the different issue in the Wrongful Discharge proceedings.

¶24     Sound policy supports the Court's decision. As the U.S. Supreme Court has previously held, unemployment compensation must be provided to those deserving with utmost expediency. *California v. Java,* 402 U.S. 121, 136 (1971). For that reason, both the federal government, through the United States Department of Labor, and the Legislature of the U.S. Virgin Islands, through the enactment of the applicable provisions of Title 24 of the Virgin Islands Code, have established procedures designed to get "money into the pocket of the unemployed worker at the earliest point that is administratively feasible." *Id.*

¶25     The stated purpose of the Virgin Islands Unemployment Insurance Act ("UIA"), which includes Section 304(b)(3), is to establish a general unemployment fund to help "sustain the morale and conserve the skills and standards of living of those who became unemployed, by enabling them to meet their essential expenses." 24 V.I.C. § 301. "Essential expenses," logically, need expeditious delivery. Thus, granting preclusive effect to VIESA findings would undermine the implicit policy of providing quick relief under the present system of unemployment insurance, as "a broad rule of collateral estoppel" might place undue pressure on employers to "litigate to the utmost." Fleming James, Jr. & Geoffrey C. Hazard, Jr., Civil Procedure, § 11.17, at 620 (3d ed. 1985). To the extent that VIESA findings were deemed to be preclusive, employers could choose to litigate vigorously rather than risk compromising their defense in a subsequent action, such as one for wrongful discharge, where potential liability could be much greater. Applying issue preclusion in such a setting could result, therefore, in lengthy hearings that would slow the receipt

of benefits and frustrate the intent of quickly putting money into the pocket of the unemployed worker. *See Swineford*, 15 F.3d at 1268–69 (3d Cir. 1994).

¶26    Further support for the Court's present holding can be found in the stated purpose of the Labor Relations statutes of Title 24, including Section 76. That purpose "is to encourage the friendly adjustment of employer-employee disputes through the practice and procedure of collective bargaining, and to protect the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing[.]" 24 V.I.C. § 61. So, while the Code aims to regulate employer-employee relations and protect workers' rights to organize and unionize, the UIA is concerned with safeguarding the welfare of the individual worker during times of unemployment. Thus, the different policy considerations and priorities between the two administrative schemes counsel against issue preclusion in the context presented here.

### B. The ALJ's finding that Charles was not wrongfully discharged is based on substantial evidence.

¶27    Charles argues that the ALJ's conclusion that she was terminated for cause is not based on substantial evidence. The Court finds, to the contrary, that the ALJ's determination that Charles was not wrongfully discharged is supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Virgin Islands Coalition of Citizens with Disabilities, Inc./St. Thomas v. Government of the Virgin Islands*, 47 V.I. 315, 320-21 (V.I. Super. 2005) (quoting Black's Law Dictionary (8th ed. 1999)). If "no reasonable fact finder could make [a particular] finding on the administrative record," then an administrative record is not based on substantial evidence. *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003). Furthermore, simply because the Court could reach a different conclusion based on the factual record before it does not mean that the record is unsupported by substantial evidence. *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619 (1966). That is, "substantial evidence allows for the possibility of drawing two inconsistent conclusions." *V.I. Coalition of Citizens with Disabilities*, 47 V.I. at 320. Accordingly, so long as an administrative decision is supported by substantial evidence, it is not subject to reversal simply because it might also support a contradictory finding. *Port Norris Exp. Co., Inc. v. I.C.C.*, 697 F.2d 497, 502 (3rd Cir. 1982) (citing *Consolo v. FCC*, 383 U.S. at 620).

¶28     When the Court applies the substantial evidence test, it is required to consider the "whole record." *La Vallee Northside Civic Ass'n v. Virgin Islands Bd. of Land Use Appeals*, 30 V.I. 9, 16 (V.I. Terr. 1994) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951)). In other words, the Court must do more than simply find a justification for the agency's decision, it must also determine whether the agency's ruling was reasonable in light of all the evidence presented. *Id.* "The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Government of the Virgin Islands v. Public Employee Relations Board*, 22 V.I. 12, 23 (V.I. Terr. 1986). Finally, when the Court reviews an agency record for lack of substantial evidence, it must be conscious of the ALJ's opportunity to appraise the credibility and consider the weight of the evidence in the first instance. *Marte De Velez v. Virgin Islands Dept. of Lab.*, Memorandum Opinion and Order, Case No. ST-2013-CV-00268, at 3 (V.I. Super. July 25, 2018) (unpublished).

¶29     Here, the ALJ heard and considered the testimony of Petitioner Olivina Charles and Orneth La Corbiniere, Respondent Kelly's president. The ALJ also heard the testimony of two witnesses for Charles. At the hearings, both Charles and La Corbiniere testified at length about their respective recollections of the events preceding and following the termination of Charles's employment. Furthermore, the ALJ considered the various letters La Corbiniere had sent Charles over a period of more than two years regarding Charles's job performance. The letters indicate a pattern of poor work quality and insubordination by Charles. One letter was sent in January 2001, much earlier than the 2002 discord that arose between Charles and La Corbiniere regarding the underpayment of wages. The testimony and documentary evidence considered by the ALJ support the ALJ's finding that Charles was terminated for cause and, thus, was not wrongfully discharged from her position, and a reasonable person could reach the same conclusion if presented with the same evidence.

## C. The witness testimony record is accurate.

¶30     Charles claims that the ALJ's Decision erroneously states that "Pauline Garry James attended as a witness for Respondent" notwithstanding the fact that James never testified at the hearing.

¶31    The Commissioner's Final Order states, and this Court's review of the record confirms, that while the ALJ's Decision does indeed state that James attended as a witness, it is clear from the transcripts that James never testified as a witness. Therefore, the error regarding whether James was a witness at the hearing is harmless, and this claim of error also fails.

## D. Charles's contention that the ALJ's Decision should address his ruling that Charles had the duty to go forward is meritless.

¶32    Finally, Charles argues that the ALJ's Decision should address Charles's objection to the ALJ's ruling at the outset of the hearing that Petitioner had the burden to go forward. Yet, Charles presents no legal basis or grounds upon which she makes this assertion. Nonetheless, based upon the examination of the record, the Court finds Charles's contention meritless.

¶33    In a civil case, the burden of proof involves two distinct elements: the burden of going forward with proof (the burden of 'production') and the burden of persuading the trier of fact (the burden of 'proof').") *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 287 (3d Cir. 2006).

¶34    The burden of proof in the administrative hearing under review is governed by a Department of Labor regulation, which provides that the employer bears the ultimate "burden of persuading" the presiding officer, "by a preponderance of the evidence, that the discharge was lawful." 24 V.I. R. & REGS. § 77–59.

¶35    At the February 6, 2008 hearing, the ALJ never stated that Charles had the burden of going forward. Rather, the ALJ stated that Charles "bears the burden of establishing by a preponderance of the evidence that her discharge was unlawful."[4] In other words, the ALJ erroneously misplaced the burden of proof on Charles in contravention of Supreme Court jurisprudence and Section 77-59 of the applicable regulations that place the burden of proof on the

---

[4] The Supreme Court of the Virgin Islands has instructed that to state a claim under Section 76, an employee was only required to plead the identity of his employer and that his employer wrongfully discharged him. *See Rennie v. Hess Oil Virgin Islands Corp.*, 62 V.I. at 544. Furthermore, an employee is not required to anticipate in his complaint any affirmative defenses that his employer might raise in its answer, such as the permissible grounds for discharge set forth in section 76(a)(1)-(9). *Id.* Thus, in the instant case, Charles needed only to plead that Kelly was her employer and that Kelly wrongfully discharged her, but she was not required to anticipate in her complaint any affirmative defenses that Kelly might assert.

employer. After this declaration by the ALJ at the beginning of the February 06, 2008 hearing, Charles, through her counsel, objected to the ALJ's statement that Charles had the burden of proof on her wrongful discharge claim. The ALJ asked Charles, through counsel, to submit a post-hearing brief on the issue of the allocation of the burden of proof. Charles submitted the requested brief to the Hearings and Appeals Unit of the Department of Labor on February 15, 2008. At the beginning of the March 19, 2008 hearing, the ALJ acknowledged that he found Charles's legal brief persuasive and, consequently, the ALJ conceded that the burden of proof did not rest on Charles. Therefore, the record indicates that the ALJ not only addressed the outcome of Charles's objection, but ultimately ruled in her favor. Accordingly, this claim of error also fails.

In light of the foregoing, it is hereby

ORDERED that the decision in the matter *OLIVINA CHARLES v. KELLY'S CLEANING SERVICES, INC.,* (WD-030-2003-STX) is AFFIRMED. It is further

ORDERED that Petitioner's Petition is DISMISSED WITH PREJUIDCE. It is further

ORDERED that Petitioner's Motion to compel Respondent Department to produce the record of all proceedings is denied as moot. It is further

ORDERED that this case is CLOSED.

DATED: January _____10_____, 2024.

DOUGLAS A. BRADY, JUDGE

**ATTEST:**

TAMARA CHARLES
Clerk of the Court

By: _____
Court Clerk Supervisor
01-10-2024